**In re Katheryn Irene ANDERSON, Debtor.**

**Bankruptcy No. 87–00828–LM7.**

United States Bankruptcy Court, S.D. California.

Nov. 5, 1987.

David E. Britton, San Diego, Cal., for debtor.

Jerry Suppa, San Diego, Cal., for Mellon Financial.

Andrew Adler, San Diego, Cal., for Tom Kavanaugh, et al.

## MEMORANDUM DECISION

### LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Katheryn Anderson, a Chapter 7 debtor, brings this motion for dismissal of her Chapter 7 case. She also asks this Court to order San Diego Paralegal Services to refund monies she paid them for assistance in filing her bankruptcy petition. Finally, she asks that this Court enjoin San Diego Paralegal Service from engaging in the unauthorized practice of law.

### FACTUAL SUMMARY

When Ms. Anderson was having financial difficulties, she responded to an ad in a local newspaper by San Diego Paralegal Services, a sole proprietorship run by Tom Kavanaugh. She was attracted by the ad because it said that San Diego Paralegal would come to your home, and she was without transportation.

She telephoned San Diego Paralegal and spoke with Kavanaugh. Kavanaugh explained he was a paralegal and that San Diego Paralegal was a typing service. She indicated she was thinking about filing bankruptcy and asked him to come to her home because her car was inoperative.

Kavanaugh went to her house and questioned her about her assets, liabilities and financial affairs from a questionnaire (Exhibit "C") which roughly parallels those questions asked by Official Form Nos. 6 and 7 prescribed by the Judicial Conference of the United States. Kavanaugh admits the answers to the questions on Exhibit "C" were written down by him.

During the interview, Anderson asked Kavanaugh a number of questions concerning the consequences of filing bankruptcy. She asked him whether she would lose her car if she filed Chapter 7; he said, "yes". She asked him if she would be able to keep her income tax refund. He indicated prob-

ably. He told her that the income taxes which she owed would have to be paid after bankruptcy. She mentioned that she had a pending civil lawsuit which would bring in extra money and inquired whether she needed to report it. He advised her not to worry about it and that it did not need to be reported. * * *

When she inquired about a Chapter 13, he indicated that it would cost her more money for a Chapter 13; that she would have three years to pay it off and that the payments would be $150 per month. He did not tell her that a Chapter 13 plan could last up to five years. Based on his statements, she decided not file Chapter 13.

Anderson paid Kavanaugh one-half of the $290 required, and signed an "Agreement and Guarantee" appended to the questionnaire, which stated:

> I, the undersigned, hereby authorize San Diego Paralegal Clinic, a legal scrivener service, to transcribe the information submitted herewith, in order for them to complete the proper legal forms for me to file bankruptcy. I consider myself competent to represent myself in court and shall not expect said company to give me any legal advice or represent me in court or in any manner whatsoever.

The testimony conflicts as to who chose the exemptions claimed by Anderson in her Chapter 7 case. Kavanaugh states that it is his practice to hand lists of exemptions available under California Code of Civil Procedure § 703.140 and § 704.010 *et seq.,* together with a copy of the statute to the client, to permit her to choose which exemption scheme to use when she files. The exemption checklists San Diego Paralegal Services uses were obtained from a Nolo Press do-it-yourself bankruptcy book and from a form devised by a local San Diego attorney.[1] Ms. Anderson testified that Kavanaugh picked the exemptions for her; that she had no idea what she could keep under applicable exemption laws if she filed a Chapter 7. Her testimony is credible on this point.

---

1. There is no indication that the attorney has authorized the use of this form by San Diego Paralegal Service.

After the Chapter 7 was filed, Ms. Anderson received an income tax refund of $1,050, rather than the $500 refund she was expecting and had scheduled. She called Mr. Kavanaugh when she got the larger refund and asked if she should amend her bankruptcy schedules. He told her not to worry about it. Consequently, no amendment was ever filed.

At the § 341(a) hearing, Anderson, who was appearing *in pro per*, was questioned at length by the attorney for Mellon Bank. Mellon eventually filed an action to determine non-dischargeability of the debt she owed them. From a conversation she had with Mellon's attorney after the § 341(a) hearing and other "free advice" given by our generous local counsel in the hallway outside the hearing room, she began to question whether she should have filed a Chapter 7 proceeding at all.

Indeed, an examination of the debtor's schedules supports her regret at having done so. She lists only $2,340 in unsecured debt and $533 in non-dischargeable debt to the IRS. Her only secured debt is that to Mellon Financial for $2,380, for which the collateral is a 1968 Dodge Dart valued at $250. She is employed as a sheet metal mechanic, earning net take home pay of $1,016 per month, and having net income over expenses of $156 per month. Further, her testimony indicated that although she was being pressured by some of her creditors when she filed her Chapter 7 case, she was current with Mellon and Citibank, her two largest creditors.

## ISSUES

I. Whether Tom Kavanaugh, doing business as San Diego Paralegal Service, is engaged in the unauthorized practice of law under California law?

II. Whether Tom Kavanaugh, doing business as San Diego Paralegal Service, should be required to refund to Katheryn Anderson, all monies she paid him to assist her in filing her bankruptcy.

III. Whether an injunction against the unauthorized practice of law should issue against Tom Kavanaugh doing business as San Diego Paralegal Service.

IV. Whether debtor's case should be dismissed.

## DISCUSSION

### I.

Local District Court Rule 110–3(a) provides in pertinent part:

*Admission to the Bar of this Court.* Admission to and continuing membership in the Bar of this court is limited to attorneys of good moral character who are active *members in good standing of the State Bar of California.* [emphasis added]

The standards for becoming a member of the State Bar of California are found at Bus. & Prof.Code § 6060 *et seq.* It is not controverted that Kavanaugh is not a member of the State Bar. California law punishes the unlawful practice of law as a misdemeanor. Cal.Bus. & Prof.Code § 6126 provides:

Any person advertising himself as practicing or entitled to practice law or otherwise practicing law, after he has been disbarred or while suspended from membership in the State Bar, or who is not an active member of the State Bar, is guilty of a misdemeanor.

Whether one is engaged in the practice of law or is merely a legal scrivener has long been settled under California law. In *People v. Sipper*, 61 Cal.App.2d Supp. 844, 846 (1943), the court wrote:

The term "practice law" or its equivalent, "the practice of law," has been repeatedly defined by our reviewing courts. They have uniformly said that "as the term is generally understood, the practice of law ... includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court." [citing *People v. Merchants Protective Corp.*, 189 Cal. 531, 535, 209 P. 363 (1922); *State Bar v. Superior Court*, 207 Cal. 323, 335, 278 P. 432 (1929)]

If defendant had only been called upon to perform and had only undertaken to perform the clerical service of filling in the blanks on a particular form in accordance with information furnished him by the parties, or had merely acted as a scrivener to record the stated agreement of the parties to the transaction, he would not have been guilty of practicing law without a license. [citations omitted] But the record supports the conclusion that he went further—that he determined for the parties the kind of legal document they should execute in order to effectuate their purpose. This constituted the practice of law. *Id.* at 846–47.

In a recent California decision, *People v. Landlords Professional Services, Inc.*, 178 Cal.App.3d 68, 223 Cal.Rptr. 483 (1986), the Court of Appeals affirmed issuance of a preliminary injunction under § 6126. In *Landlords*, defendant filled out Judicial Counsel forms for unlawful detainer actions on behalf of landlords, filed the forms with the court and served these pleadings on tenants. In performing these tasks, defendant conducted interviews with "clients", elicited information during the interview and, based upon the responses in the interview, selected and prepared the appropriate forms. In issuing the preliminary injunction, the Court of Appeals rejected defendant's argument that the above activities did not constitute practicing law.

■ After considering the testimony of Kavanaugh and debtor in light of the *Landlords* and *Sipper* opinions, the conclusion that Kavanaugh is engaged in the unauthorized practice of law is inescapable. Kavanaugh held himself out to be qualified to give advice concerning bankruptcies. He interviewed debtor and solicited information from her, from which he selected and prepared bankruptcy schedules. He advised Anderson of her legal rights vis-a-vis secured collateral and of the differences between a Chapter 13 filing and one under Chapter 7. He further (incorrectly) advised her regarding the necessity to file amendments to her schedules to accurately reflect an increased tax refund. It also appears that he selected her exemptions.

All of these acts require the exercise of legal judgment beyond the knowledge and capacity of the lay person. *In re Arthur,* 15 B.R. 541, 8 B.C.D. 459 (Bankr.E.D.Pa. 1981); *O'Connell v. David,* 35 B.R. 141 (Bankr.E.D.Pa.1983).

## II.

■ California law has long held that a contract executed in violation of a statute which requires one of the parties to be licensed will not be enforced. *Payne v. DeVaughn,* 77 Cal.App. 399, 403, 246 P. 1069 (1926); *Orlinoff v. Campbell,* 91 Cal. App.2d 382, 205 P.2d 67 (1949). The contract in the instant case recites that the fee paid by debtor is non-refundable; however, since the contract cannot be enforced under California law, this provision is of no effect. Inasmuch as the contract was executed in violation of a statute designed to protect the public, the contract is void and debtor is entitled to restitution of all monies paid under the contract. Cal.Civ.Code § 1689(b)(6) authorizes rescission of a contract if the "public interest will be prejudiced by permitting the contract to stand." Cal.Civ.Code § 1692 provides in pertinent part:

> When a contract has been rescinded ... The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction....

Although not articulated in the moving papers, debtor's request for a refund from Kavanaugh, taken together with the motion to dismiss her case, indicates a desire to rescind the transaction. Since the transaction is void under California law, debtor is entitled to a refund of all monies paid to Kavanaugh.

## III.

Debtor has also requested that this Court enjoin Kavanaugh from future unauthorized practice of law. In support of this request, debtor cites *O'Connell v. David,* 35 B.R. 141 (Bankr.E.D.Pa.1983). In *O'Connell,* a Chapter 13 trustee brought an action to enjoin several defendants from engaging in the unauthorized practice of

law. After a trial of the matter, the court issued an injunction enjoining the defendants from preparing Chapter 13 petitions, statements, schedules or plans on a regular basis for a fee, soliciting debtors for such services or offering advice concerning the differences between a Chapter 13 case and one under Chapter 7. The court also directed that debtors be questioned at the § 341(a) meeting concerning any assistance they received in preparing their schedules. In addition, the court directed the appointment of a special master to monitor compliance with its injunction.

A similar situation arose in *In re Arthur, supra,* where the court, apparently on its own motion, entered a similar injunction *and* directed that the unauthorized practitioner refund all fees collected from any debtors. In each instance, the court granted relief upon its inherent authority as a court to determine what constituted the practice of law and "broad equity" powers under § 105(a).[2]

■ Although the *Arthur* court based its injunction on the "broad equity powers" of the court under § 105(a), a statutory basis for such an injunction exists. Compensation of debtor's counsel must be disclosed under § 329 and is subject to review by the Court for reasonableness and disgorging of all fees determined to be excessive to the Chapter 7 trustee. This process of disclosure and disgorgement involves the administration of the estate which is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A). Even though Kavanaugh is not licensed to practice law, § 329 applies to non-lawyers who engage in the practice of law before bankruptcy courts. *In re*

*Telford,* 36 B.R. 92, 11 B.C.D. 590 (9th Cir.BAP 1984).

Accordingly, an injunction will issue barring Kavanaugh, doing business as San Diego Paralegal Services, from engaging in any of the following activities for a fee: Advising debtors regarding exemptions, dischargeability or the automatic stay; providing advice concerning the differences and/or relative advantages of filing a Chapter 13 or Chapter 7 case; and, from interviewing debtors with an eye towards preparing statements or schedules. Kavanaugh will also be barred from soliciting any such employment in accordance with the prohibition contained in Cal.Bus. & Prof.Code § 6126.

## IV.

■ The only remaining issue to be resolved is whether debtor's case should be dismissed. Recent case authority indicates that a Chapter 7 debtor has no right to have his or her case dismissed. *In re Underwood,* 24 B.R. 570, 571 (D.C., S.D.W.Va. 1982); *In re Mathis Ins. Agency, Inc.,* 50 B.R. 482, 485, 486 (Bankr.E.D.Ark.1985); *In re Waldrep,* 20 B.R. 248, 250, 9 B.C.D. 194 (Bankr.W.D.Tex.1982). However, where debtor is a victim of someone engaged in the unauthorized practice of law, equity dictates that, under certain circumstances such as those before the Court, the motion to dismiss be granted.

Counsel for debtor is directed to prepare an order in conformance with this Memorandum Decision with ten (10) days from the date hereof.

---

2. In a recent opinion, *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987) in the course of ruling that bankruptcy courts do not possess the contempt power, the Court wrote: "Unlike an article III court, a bankruptcy court has no necessity to invoke an inherent contempt power to vindicate its authority; article I bankruptcy judges can enforce compliance with their orders by resorting to article III courts.... [citations omitted] Congress vests bankruptcy courts with their jurisdiction and their authority has no 'inherent' source." At 1284. Inasmuch as Kavanaugh's conduct violates California law

and the local rules of the District Court, which is an Article III court (and of which this Court is a "unit" under 28 U.S.C. § 151, and each bankruptcy judge a judicial officer), *Sequoia* is no impediment to this Court enjoining Kavanaugh from the unauthorized practice of law. The opinion of the Court of Appeals merely dictates that if Kavanaugh violates the terms of the injunction which the Court issues, the District Court is the appropriate judicial forum for considering whether punishment for contempt is appropriate.