In re John M. **WEBSTER**, Debtor.

M. Scott **MICHEL**, United States Trustee for the Eastern District of Wisconsin, Plaintiff.

v.

Rodney A. **LARSON** d/b/a Bay Business & Individual Services, Defendant.

Bankruptcy No. 89–06066–JES. Adv. No. 90–0100.

United States Bankruptcy Court, E.D. Wisconsin.

Oct. 5, 1990.

**112**

John Robert Byrnes, Milwaukee, Wis., Asst. U.S. Trustee, Office of U.S. Trustee.

Rodney A. Larson, Little Suamico, Wis., pro se.

John M. Webster, Oconto Falls, Wis., pro se.

David J. Matyas, De Pere, Wis., trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This adversary case requires a determination of whether the activities of Rodney A. Larson ("Larson") in the bankruptcy case of John M. Webster ("Webster"), a *pro se* debtor, constituted the unauthorized practice of law. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(O).

An evidentiary hearing was held on August 9, 1990. Larson failed to submit a responsive pleading. However, he appeared and testified at this hearing. Webster also testified.

Larson is a sole proprietor doing business as Bay Business & Individual Services. He has been operating in and near Green Bay, Wisconsin, since October of 1989. Larson acknowledges that he is not licensed to practice law, but denies that he has done so. The United States Trustee asserts that Larson is engaged in the unauthorized practice of law.

Webster testified that he first heard of Larson through an advertisement in the *Green Bay Press–Gazette*, a local newspaper announcing that Larson provided "Bankruptcy Services." Larson testified

that his ad originally read "Bankruptcy, Legal Services," but was later revised by omission of the word "Legal." (Tr. p. 44) Larson received $91.10 from Webster. Of this amount, $61.10 was for his basic services in connection with Webster's bankruptcy petition, statement of affairs and schedules. The balance of $30.00 was for his additional services in connection with two lien avoidance motions. Larson stated that he has since increased his fee for his basic services to $90 and is contemplating a further increase to $120.

After Webster initially contacted Larson by telephone, Larson scheduled an appointment to meet with Webster at Webster's home. Upon meeting Webster, Larson obtained from him the information necessary to complete the bankruptcy forms. Larson then left, typed up the papers and later returned to Webster's home with the completed forms. Larson's method of handling this transaction was consistent with his treatment of other *pro se* debtors.

Larson claims that he only sells bankruptcy forms and provides typing services. He testified that he types the forms "as it protruded from my client's mouth exactly" (Tr. pp. 27–28). Webster's testimony contradicts Larson and is more credible. It reveals that Larson is doing much more than selling bankruptcy forms and providing typing services. According to Webster's testimony, Larson advised and counseled him with respect to the completion of the bankruptcy petition, statement of affairs and schedules, including which exemptions Webster should claim. It was Larson who explained to Webster the differences between the federal and state exemptions and why the federal exemptions should be claimed by Webster. It was also Larson who selected the specific federal exemptions which appear on Webster's Schedule B–4. Webster also asserted that Larson informed him that his bankruptcy filing fee could be paid in installments. Webster added that it was Larson who advised him about lien avoidance motions, that Larson filled out the motions and that

Webster had never heard of a lien avoidance motion before being so informed by Larson. The two lien avoidance motions filed in this case were groundless and were ultimately denied.

Larson's efforts to justify his conduct are unavailing. His explanation that he believed he was providing "a good service ... with the intention to allow my clients with an economical way of filing bankruptcy because of the fact that attorneys are relatively more expensive" (Tr. p. 36) is no justification. Larson submitted into evidence certain agreements which he had prepared and which were signed, at Larson's request, by many *pro se* debtors with whom he was transacting business.[1] The agreements assert that he was "merely providing a typing service" and that he "did not give any legal advice." These are self-serving declarations and not controlling upon the court. What Larson stated he was doing in these agreements and what the record clearly demonstrates he was doing are two entirely different things.

The circumstances in this case match those in *In re Bachmann*, 113 B.R. 769 (Bankr.S.D.Fla.1990). In *Bachmann*, the court found that an individual was doing more than selling and typing bankruptcy forms, as was claimed by him, but was in fact engaging in the unauthorized practice of law. This is precisely the situation here. The conduct of Larson, a lay person, in Webster's bankruptcy case constituted the unauthorized practice of law. The court in *Bachmann* aptly declared:

> According to generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before Judges and Courts and, in addition, conveyancing, the preparation of legal instruments of all kinds and, in general, all advice to clients and all action taken for them in matters connected with the law (citing *Howton v.*

---

1. In the case at bar, Webster never signed such an agreement. Even if it had been signed by Webster, it would not have changed the result in this case.

*Morrow,* 269 Ky. 1, 106 S.W.2d 81 [Ct. App.1937] ).

*Bachmann* at 772.

This court has had the opportunity to observe the demeanor of the witnesses. It is satisfied that Webster lacked the necessary sophistication to complete the bankruptcy forms and that the completed forms are entirely the work product of Larson. When Webster was questioned by the court as to why he selected the federal exemptions over the state exemptions and why he chose specific exemptions, he replied that it was Larson who made these decisions, declaring:

> I actually don't even ... to be truthful, I don't know what you're really talking about. I honestly don't.

(Tr. p. 47) Larson called all of the shots in this case. By doing so, he exercised legal judgment and was clearly engaging in the unauthorized practice of law.

■■■ In addition, Larson violated 11 U.S.C. § 329 of the Bankruptcy Code.[2] § 329(a) of the Bankruptcy Code requires a debtor's attorney to file with the court a statement of compensation which has been paid to him or agreed to be paid for his services. § 329(b) permits the bankruptcy court to determine the reasonableness of this compensation. The fact that Larson is not an attorney does not excuse him from complying with § 329. A lay person is subject to § 329 if he renders "legal services" to the debtor. *In re Telford,* 36 B.R. 92 (9th Cir. BAP 1984); *In re Glad,* 98 B.R. 976 (9th Cir. BAP 1989); *In re Grimes,* 115 B.R. 639, 649 (Bankr.D.S.D.1990). Larson

also violated Bankruptcy Rule 1006(b)(3)[3] which requires that a filing fee must be paid in full before a debtor may pay an attorney *or any other person who renders services to the debtor in connection with his case* (emphasis provided). Here, Larson wrongfully obtained his fee before the full bankruptcy filing fee had been remitted to the Clerk of the Bankruptcy Court.

■■■ The court shall now consider the appropriate remedy to be imposed as a result of Larson's unauthorized practice of law and violations of § 329 of the Bankruptcy Code and Bankruptcy Rule 1006(b)(3). The United States Trustee seeks a permanent injunction. Courts have the power to determine what constitutes the unauthorized practice of law and to regulate such acts. *Matter of Arthur,* 15 B.R. 541 (Bankr.E.D.Penn.1981). In considering the proper remedy to regulate the unauthorized practice of law, courts should consider the policy of protecting the public's interest in effective legal representation and also should recognize the lack of a civil malpractice remedy for persons damaged by a non-lawyer practitioner. *In re Arthur,* 15 B.R. at 545. In *In re Chas. A. Stevens & Co.,* 108 B.R. 191 (Bankr.N.D.Ill. 1989), the court declared, 108 B.R. at 194:

> In extreme cases, the unauthorized practice of law may be enjoined where it appears that an injunction is the only remedy to put a stop to such practice.

This is an extreme case which warrants the issuance of a permanent injunction. Furthermore, Larson shall pay to the United States Trustee its reasonable attorney's

**2.** § 329. Debtor's transactions with attorneys.
 (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
 (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

 (1) the estate, if the property transferred—
 (A) would have been property of the estate; or
 (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
 (2) the entity that made such payment.

**3.** Rule 1006.
 (b) *Payment of Filing Fee in Installments.*

 . . . . .

 (3) *Postponement of Attorney's Fees.* The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.

fees and costs, including payment of Webster's witness fees, in the aggregate sum of $750. Larson shall also refund to Webster the entire fee he received from Webster in the amount of $91.10. In addition, Larson shall turn over to the United States Trustee the following: names and addresses of all parties (including persons, corporations, partnerships and other entities) with whom, during the period from January 1, 1990 to the date of this decision, he has or intends to provide any services relating to bankruptcy matters. The United States Trustee shall send a copy of this decision and separate order to these parties. The United States Trustee shall also publish a copy of the court's separate order in connection with this decision in the *Green Bay Press–Gazette* once a week for three consecutive weeks.

This decision shall constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### ORDER

The plaintiff, M. Scott Michel, United States Trustee for the Eastern District of Wisconsin, commenced an adversary case against the defendant, Rodney A. Larson ("Larson"), a sole proprietor doing business as Bay Business & Individual Services. The complaint asserts that Larson engaged in the unauthorized practice of law in connection with the bankruptcy case of John M. Webster, a *pro se* debtor. A trial was conducted on August 9, 1990. Based upon the testimony, exhibits and entire records, files and proceedings of this case, the court found that Larson is not an attorney and that, by virtue of his activities in connection with the Webster bankruptcy case, he engaged in the unauthorized practice of law. The court also found that Larson violated 11 U.S.C. § 329 of the Bankruptcy Code and Bankruptcy Rule 1006(b)(3). In accordance with this court's decision rendered this date.

IT IS ORDERED:

1. That Larson be and he hereby is permanently enjoined from engaging in the unauthorized practice of law, which unauthorized actions include: providing counseling, advice and recommendations with respect to any of the provisions of the Bankruptcy Code: preparing either directly or indirectly, the bankruptcy petition, statement of affairs and schedules: preparing any motions or applications of any kind pertaining to bankruptcy, including, but not limited to, motions for lien avoidance and motions to pay the bankruptcy filing fee in installments.

2. That Larson shall, within 10 days after the date of this order, remit to John M. Webster the total fee collected from Webster in the sum of $91.10. Larson shall furnish to the United States Trustee evidence of said payment. In the event Larson fails to remit said payment, Webster may enter a judgment against Larson for said amount.

3. That Larson shall, within 30 days after the date of this order, remit to the United States Trustee payment of its reasonable attorney's fees and costs, including payment of Webster's witness fees, in the aggregate sum of $750. In the event Larson fails to remit said payment, the United States Trustee may enter a judgment against Larson for said amount.

4. That Larson shall, within 30 days after the date of this order, turn over to the United States Trustee the following: the names and addresses of all parties (including persons, corporations, partnerships and other entities) with whom, during the period from January 1, 1990 to the date of this order, he has or intends to provide any services relating to bankruptcy matters. The United States Trustee shall send a copy of this order and separate decision to these parties.

5. The United States Trustee shall publish a copy of this order in the *Green Bay Press–Gazette* once a week for three consecutive weeks.

6. A copy of this order and the separate decision shall be mailed by the United States Trustee to the Brown County District Attorney and to the Committee on the Unauthorized Practice of Law for the State Bar of Wisconsin.

7. The United States Trustee may renew its request for further sanctions in the event of any violation by Larson of this order.