In the Matter of John Michael
BRIGHT, Debtor.

Bankruptcy Nos. 93–42713–S, 93–46808–S.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 9, 1994.

Stuart Gold, Southfield, MI, for moving party.

Margaret Mainardi, in pro. per.

## OPINION

WALTER SHAPERO, Bankruptcy Judge.

*Background and Facts*

Margaret Mainardi ("Mainardi") is an independent licensed paralegal who specializes in preparing divorce kits. Although most of her work is in the area of divorce, Mainardi also offers assistance in preparing Chapter 7 bankruptcy forms; she completes about four sets per year. John Michael Bright ("Debtor") hired Mainardi for assistance in completing Chapter 7 bankruptcy forms. His Chap-

ter 7 petition was filed on March 11, 1993. A Final Decree was entered on September 28, 1993. The Trustee brings this action against Mainardi asserting that Mainardi's services with respect to Debtor's bankruptcy constituted the unauthorized practice of law.

While many of the facts concerning the type of services Mainardi provided for Debtor are disputed, it is clear that in this case Mainardi provided the services set forth below. Mainardi either admitted or implied that she: (1) collected raw data concerning Debtor's finances (Bright transcript, pp. 8, 16), (2) decided where information should be placed on the forms and in what format (Bright transcript, pp. 8, 16), and (3) added language to standard forms that was not dictated by the Debtor and transcribed verbatim by Mainardi (Mainardi transcript, p. 18). Mainardi also admits that it is her normal practice to: (1) respond to questions from debtors regarding the interpretation/definition of terms (Mainardi transcript, pp. 13, 14), (2) show debtors particular pages of reference books in response to a debtor question (Mainardi transcript, p. 16), (3) provide information about local procedures and requirements (Mainardi's Response/Objections to Order to Show Cause), and (4) consult a licensed attorney when a legal question arose and relate the attorney's response to her clients (Mainardi transcript, p. 8).

*Law and Discussion*

I. *Does federal law or state law regulate the extent to which non-lawyers may appear before the bankruptcy courts?*

■ Pursuant to the supremacy clause of the United States Constitution, a state may not regulate the practice of law before a federal tribunal if federal law prescribes the qualifications for practicing before the tribunal. *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Therefore, unauthorized practice of law rules do not apply to practice before a tribunal to the extent that regulation of practice before that tribunal has been preempted by federal law.

■ In the bankruptcy area, there is no federal law which regulates the extent to which non-lawyers may appear before the bankruptcy courts: (1) there is no Bankruptcy Code provision which regulates the activities of a non-lawyer before the court, (2) there is no Bankruptcy Rule that specifically regulates the activities of a non-lawyer before the court,[1] and (3) there is no local bankruptcy rule which regulates the practice of non-lawyers. Because there is no federal law or rule concerning the practice of non-lawyers before the bankruptcy courts, Michigan law is not preempted by federal law in this area.

Mich.Comp.Laws Anno. § 600.916, Mich. Stat.Anno. § 27A.916 prohibits a non-lawyer from practicing law. Mich.Comp.Laws Anno. § 600.916, Mich.Stat.Anno. § 27A.916 states,

It is unlawful for any person to practice law, or to engage in the law business, or in any manner whatsoever to lead others to believe that he is authorized to practice law or to engage in the law business, or in any manner whatsoever to represent or designate himself as an attorney and counselor, attorney at law, or lawyer, unless the person so doing is regularly licensed and authorized to practice law in this state. Any person who violates the provisions of this section is guilty of contempt of the supreme court and of the circuit court of the county in which the violation occurred

. . .

The Michigan code, however, does not define the practice of law. Because the legislature has not seen fit to define what constitutes the practice of law, the task of constructing a definition of the "practice of law" has largely been left to the judiciary. *State Bar v. Cramer,* 399 Mich. 116, 249 N.W.2d 1, 7 (1976); *Ingham County Bar Assoc. v. Walter Neller Co.,* 342 Mich. 214, 69 N.W.2d 713, 717 (1955). United States Bankruptcy courts in other jurisdictions, coming to this same conclusion, look to state law for guidance when determining whether a person has engaged in the unauthorized practice of law. *In re Anderson,* 79 B.R. 482 (Bankr.S.D.Cal.1987);

---

1. Fed.R.Bankr.P. 9010, however, states that lay people can "perform any act not constituting the practice of law" thus recognizing that certain acts constitute the practice of law and may not be performed by non-lawyers.

*In re Arthur,* 15 B.R. 541 (Bankr.E.D.Pa. 1981); *In re Preston,* 82 B.R. 28 (Bankr. W.D.Va.1987).

In summary, because the federal law does not preempt Michigan law, Michigan law regulates the extent to which non-lawyers may appear before the bankruptcy court.

II. *Do the services Mainardi provided with respect to Debtor's bankruptcy and those services she provides as a common practice constitute the unauthorized practice of law?*

■ There have been no cases in Michigan that specifically concern the unauthorized practice of law in the bankruptcy setting. Michigan courts have defined the "practice of law" in other contexts such as divorce, real estate, probate, and wrongful death. In these cases, the Michigan courts have held that advertising for sale and distributing do-it-yourself kits, filling out collateral standard printed forms, and performing work of a preparatory nature such as research, investigation of details, and assemblage of data is not the practice of law. However, advertising professional guidance to clients, arranging personal conferences with clients, preparing documents, filing completed documents with the court, and personally advising clients as to proper testimony is the practice of law and, thus, when performed by a non-attorney constitutes the unauthorized practice of law.[2]

Bankruptcy courts in other jurisdictions have attempted to define what constitutes the practice of law in the bankruptcy context. The following activities have been defined as the practice of law in other jurisdictions:

(1) Determining when to file bankruptcy cases. *In re Herren,* 138 B.R. 989, 995 (Bankr.D.Wyo.1992).

(2) Deciding whether to file a Chapter 7 or a Chapter 13. *Arthur,* 15 B.R. at 543.

(3) Filling out or assisting debtors in completing forms or schedules. *In re Glad,* 98 B.R. 976, 978 (Bankr. 9th Cir.BAP 1989); *In re McCarthy,* 149 B.R. 162, 166 (Bankr. S.D.Cal.1992); *Herren,* 138 B.R. at 993–4; *In re Webster,* 120 B.R. 111, 113 (Bankr. E.D.Wis.1990); *In re Bachmann,* 113 B.R. 769, 773–4 (Bankr.S.D.Fla.1990); *In re Calzadilla,* 151 B.R. 622, 625 (Bankr. S.D.Fla.1993).

(4) Solicitation of financial information and preparation of schedules. *Herren,* 138 B.R. at 994; *In re Grimes,* 115 B.R. 639, 643 (Bankr.D.S.D.1990).

(5) Providing clients with definitions of legal terms of art. *Herren,* 138 B.R. at 995.

(6) Advising debtors which exemptions they should claim. *McCarthy,* 149 B.R. at 166–7; *Herren,* 138 B.R. at 995; *Webster,* 120 B.R. at 113.

(7) Preparing motions and answers to motions. *McCarthy,* 149 B.R. at 166; *Webster,* 120 B.R. at 113.

(8) Advising debtors on dischargeability issues. *Arthur,* 15 B.R. at 543.

(9) Advising debtors concerning the automatic stay. *Arthur,* 15 B.R. at 543.

(10) Habitual drafting of legal instruments for hire. *Arthur,* 15 B.R. at 543.

(11) Correcting "errors" or omissions on bankruptcy forms. *In re Calzadilla,* 151 B.R. at 625.

---

**2.** **Divorce:** *Cramer,* 399 Mich. 116, 249 N.W.2d 1 (1976) (Advertising for sale and distributing do-it-yourself divorce kits containing forms and documents for no-fault divorces is not the unauthorized practice of law. However, it is the unauthorized practice of law when a non-attorney advertises professional guidance to clients, arranges personal conferences with clients to discuss divorce, prepares documents, files completed documents with the court, and personally advises clients as to proper testimony.)

**Real Estate:** *Ingham County Bar Association v. Walter Neller Co.,* 342 Mich. 214, 69 N.W.2d 713, 717 (1955); *State of Michigan v. Kupris,* 366 Mich. 688, 116 N.W.2d 341 (1962) (Non-lawyer real estate brokers can fill out standard printed forms, incidental to business and without extra charge and without giving legal advice or counsel as to their legal effect and validity, but cannot give legal advice.)

**Probate:** *Detroit Bar Ass'n v. Union Guardian Trust Co.,* 282 Mich. 216, 276 N.W. 365 (1937) (A trust company cannot draft wills as the drawing of wills is the practice of law.)

**Wrongful Death:** *Shapiro v. Steinberg,* 176 Mich.App. 683, 440 N.W.2d 9 (1989) (An attorney licensed in another state who assisted a Michigan attorney on a case did not practice law when he performed work of a preparatory nature, such as research, investigation of details, assemblage of data, and similar activities.)

(12) Advising clients as to various remedies and procedures available in the bankruptcy system. *In re Calzadilla*, 151 B.R. at 625.

In the bankruptcy context, certain activities are generally not defined as the practice of law:

(1) Selling printed materials purporting to explain legal practice and procedure to the public in general and selling sample legal forms. *Herren*, 138 B.R. at 994; *Calzadilla*, 151 B.R. at 625; *Harris*, 152 B.R. 440, 445 (Bankr.W.D.Pa.1993); *Glad*, 98 B.R. 976.

(2) Providing secretarial services and typing bankruptcy forms for clients, provided the typists only copy the written information furnished by the clients. *Id.*

 A disclaimer that the non-lawyer is only providing "scrivener" or "paralegal" services is irrelevant if the non-lawyer in fact engages in unauthorized practice of law. *In re Herren*, 138 B.R. at 996. Even a debtor's signed waiver acknowledging no legal advice or legal assistance has been given does not insulate the non-lawyer service provider from liability and is ineffectual if the non-lawyer in fact engages in the unauthorized practice of law. *In re Anderson*, 79 B.R. at 483.

Consistent with Michigan and bankruptcy case law, it is clear that, in this case and in her general practice, Mainardi performed at least seven services which constitute the unauthorized practice of law. The first three services, discussed below, were specifically provided in the Bright bankruptcy. It is unclear whether any of the next four services were provided for Bright, however those four services are commonly provided by Mainardi when she prepares Chapter 7 bankruptcy forms.

 First, Mainardi collected raw data concerning Debtor's finances. (Bright transcript, pp. 8, 16). Apparently Debtor contacted Mainardi about the procedure for filing bankruptcy. Because of the great distance between Debtor's home and Mainardi's place of business, Mainardi suggested that Debtor mail her the specific information that she requested, such as a list of all the people to whom Debtor owed money and lists of bank accounts. After Debtor had mailed the information to Mainardi, Mainardi called and asked for further information including a pay stub from an employer and addresses from a bank account. And again, after a meeting with Debtor at her home Mainardi requested further information concerning "things ... she couldn't fill in at the time." (Mainardi transcript, p. 14). Actual preparation and filing for the debtor of Chapter 7 petitions, statements, and schedules constitutes the practice of law. As such, these services may be provided only by attorneys. If these services are provided by non-attorneys, these practices constitute the unauthorized practice of law. *O'Connell v. David*, 35 B.R. 141, 143 (Bankr.E.D.Pa.1983), *modified* 35 B.R. 146 (Bankr.E.D.Pa.1983), *aff'd* 740 F.2d 958 (CA 3 1984);[3] *Anderson*, 79 B.R. at 485; *Bachmann*, 113 B.R. at 774; *Herren*, 138 B.R. at 994; *Grimes*, 115 B.R. at 643.

 Second, Mainardi decided where information should be placed on the forms and in what format. (Bright transcript, pp. 8, 16). Debtor mailed Mainardi much of the information for his forms, and she typed it onto the forms outside of his presence and without his direction concerning where to place the data. Directing what property is appropriately listed and where, summarizing and reformulating the information received from clients, advising clients regarding responsibility to list all debts and the option of voluntary repayment, all require exercise of legal judgment beyond the knowledge of lay persons and, thus, constitutes the unauthorized practice of law. *Herren*, 138 B.R. at 995.

3. The Pennsylvania statute is substantially similar to the Michigan statute. 42 Pa.C.S.A. § 2524 states,

Any person who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with the [Professional Corporation Act], commits a misdemeanor of the third degree.

Third, Mainardi added language to standard forms that was not dictated by the Debtor and transcribed verbatim by her. (Mainardi transcript, p. 18). Mainardi added the following language to Schedules C and D:

(Schedule C) Any undervaluation or any asset omitted through inadvertence or oversight shall be covered by any unused part of 11 USC 522(d)(5).

(Schedule D) The Claims shown above in Schedules A thru [sic] J are liquidated, undisputed, no contingen [sic] and subject to setoff unless noted otherwise. Failure to designate a debt as disputed, unliquidated, contingent, or subject to setoff, does not constitute an admission of noncontestibility, and the right to dispute, assert setoffs, or other defenses, as to amount, liability or statue [sic], is specifically reserved.

Non-attorneys may provide secretarial services and type bankruptcy forms for clients, provided the typists only copy the written information furnished by the clients. *Herren*, 138 B.R. at 994. In addition, the State Bar of Michigan suggests in its brief, and this Court agrees, that it is not sufficient that the Debtor approve the language after it is suggested by the non-lawyer or that the Debtor select language from alternatives proposed by the non-lawyer, or from books recommended by the non-lawyer, because by suggesting alternatives the non-lawyer has limited the discretion of the Debtor. By suggesting language, thus limiting the Debtor's discretion, the non-lawyer is providing legal services. Therefore, Mainardi's addition of the language found in Schedules C and D constitutes the practice of law by a non-attorney.

Fourth, it is Mainardi's common practice to respond to questions from debtors regarding the interpretation or definition of terms. (Mainardi transcript, pp. 13, 14). At the evidentiary hearing, Mainardi stated, "I go over the form and ask them questions, and if they don't understand them, then I go over, you know, go over any rough spots they encounter when filling in the forms. The rough spots would be ... 'what does this mean?'" Providing customers with definitions of legal terms of art in connection with preparing legal documents such as the sched-

ules is giving legal advice. *Herren*, 138 B.R. at 995. Therefore, defining any terms is the unauthorized practice of law.

Fifth, Mainardi frequently shows debtors particular reference books and specific pages in those reference books. (Mainardi transcript, p. 16). Mainardi states in her testimony that when she comes to the part of the forms concerning exemptions, she shows the debtor the Michigan page and the federal page in the *Nolo* book and tells them they need to choose one set of exemptions or the other. However, directing the client to refer to what appears to be a comprehensive list of exemptions from which the client is to select assets is the unauthorized practice of law because the only fair interpretation of the referral to the provided list is that the non-lawyer is advising the client of his or her opinion regarding available exemptions. *Herren*, 138 B.R. at 995.

Sixth, Mainardi states in her Response/Objection to Order to Show Cause that she commonly "provides some basic information about local procedures and requirements." However, providing this type of information constitutes the unauthorized practice of law because non-attorneys may not advise clients as to various remedies and procedures available in the bankruptcy system. *Calzadilla*, 151 B.R. at 625; *Bachmann*, 113 B.R. at 774.

Seventh, Mainardi commonly consults with a licensed attorney when asked a legal question by a client that she cannot answer. The brief submitted for the State Bar of Michigan persuasively argues that a non-lawyer may not answer debtors' questions even if the non-lawyer's responses to the debtors are first checked with a licensed lawyer. The non-lawyer, by deciding when a lawyer needs to be called, by determining which lawyer to call, by controlling what questions are asked and how the questions are phrased, and by personally interpreting the information received from the lawyer, is making discretionary decisions reserved for those qualified to make legal decisions. Non-lawyers are also practicing law when they decide whether and how to communicate the lawyer's response to the customer and when

they advise the customer on how to implement the lawyer's response. By making the above-listed decisions, the non-lawyer controls the matter, as opposed to the lawyer or the debtor. Therefore, consulting a lawyer prior to communicating advice to the debtor does not relieve a non-lawyer from liability for the unauthorized practice of law.

▮▮▮▮▮ A collateral issue related to this point is the potential ethical violation committed by the lawyer who responds to the non-lawyer knowing the response will be passed on to the non-lawyer's customer. The lawyer may be aiding the non-lawyer in the unauthorized practice of law in violation of Michigan Rule of Professional Conduct 5.5. If, however, the non-lawyer is working under the direction and control of a licensed lawyer, then the lawyer is ultimately responsible for the debtor's representation and is responsible for ensuring that the non-lawyer's conduct is compatible with the ethical obligations of the lawyer. Michigan Rule of Professional Conduct 5.3. The lawyer is not adequately supervising the non-lawyer if the lawyer does not know about the existence or content of the meetings between the non-lawyer and the debtor [Michigan Formal Ethics Opinion R–1], if the lawyer relies solely on the non-lawyer as intermediary, neglecting to meet directly with the client [Michigan Informal Ethics Opinion RI–128], or if the lawyer fails to use his independent professional judgment to determine which documents prepared by the non-lawyer should be communicated outside the law office [Michigan Guidelines for the Utilization of Legal Assistant Services, Guideline 2 and Comment.]

III. *What policy considerations should the court weigh when limiting the rights of non-attorneys to provide services?*

▮▮▮ Statutes disallowing the unauthorized practice of law are intended to protect and secure the public's interest in competent legal representation. *Arthur,* 15 B.R. at 545. A lay person who seeks legal services is often unable to judge whether he will receive proper professional attention. In addition, a client would forfeit recourse within the legal field against a non-attorney because only attorneys are subject to regulation within the profession and would have no recourse against a non-attorney in a malpractice action should the service provider act negligently in the performance of his duties. *Id.*

On the other hand, there are numerous arguments in support of allowing non-attorneys to administer simple bankruptcies (in addition to the obvious anomaly involved in a situation where persons cannot avail themselves of the Bankruptcy Code because they cannot afford the services of an attorney). First, there are two potential constitutional issues: (1) whether it is unconstitutional to limit non-attorney typists and paralegals from practicing their trade, and (2) whether limiting non-attorney's assistance infringes upon the litigant's constitutional right of self-representation. The court in *Cramer* recognizes that while the statute prohibiting the unauthorized practice of law affects constitutionally protected rights, not every rule or law that affects constitutional rights impermissibly violates the constitution. Statutes which limit constitutional rights are valid if they are "narrowly drawn to express only the legitimate state interests at stake." *Cramer,* 399 Mich. 116, 249 N.W.2d at 8. When weighing the constitutional interests against the need to ensure competent legal representation, courts have generally held in favor of protecting the public from incompetent assistance as long as the statutes restricting the legal practice are narrowly drawn. *Id.*

Second, proponents of allowing non-attorneys to practice law claim that allowing only attorneys to practice law is inefficient. A simple bankruptcy does not need the expertise of an attorney whose time is better spent on complicated legal issues. Justice Douglas' comments speak to this point in the case of *Johnson v. Avery,* where the Supreme Court struck down a regulation forbidding inmates from assisting other inmates in the preparation of writs and other legal matters. *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Justice Douglas states,

There are not enough lawyers to manage or supervise all of these affairs; and much of the basic work done requires no special legal talent ...

claims pile high and much of the work of tracing and pursuing them requires the patience and wisdom of a layman rather than the legal skills of a member of the bar . . .

Laymen—in and out of prison—should be allowed to act as "next friend" to any person in the preparation of any paper or document or claim, so long as he does not hold himself out as practicing law or as being a member of the Bar.

*Johnson*, 393 U.S. at 491–2, 498, 89 S.Ct. at 752. Furthermore, only allowing attorneys to prepare bankruptcy forms is inefficient because people who can neither afford legal services nor qualify for legal aid and thus proceed pro per will appear in court less prepared to represent themselves if they cannot take advantage of typist and paralegal services. This lower degree of preparation further slows the administration of justice. *Cramer*, 399 Mich. 116, 249 N.W.2d at 10. (Kavanagh, J., concurring in part and dissenting in part).

Third, because the legal profession has failed to provide affordable professional legal assistance for needy groups, sufficiently skilled legal services within the means of all people are not reasonably available. *Cramer*, 399 Mich. 116, 249 N.W.2d at 10. The organized bar, which has not made available the minimal counseling which would enable a person to exercise his right of self-representation, cannot be heard to say that the service which it does not provide is the practice of law.[4] *Id.* 399 Mich. 116, 249 N.W.2d at 11 (Levin, J., dissenting). Again the *Johnson v. Avery* situation is analogous. The United States Supreme Court held in *Johnson* that "unless and until the State provides some reasonable alternative [e.g. lawyers or law students] to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners." *Cramer*, 399 Mich. 116, 249 N.W.2d at 17 *citing Johnson v. Avery*, 393 U.S. at 490, 89 S.Ct. at 751.

Fourth, in all cases, because the initial decision concerning whether the judgment of a lawyer is required is always made by a layman, be it the client, his accountant, or a friend, it is illogical to require potential clients to reject lay assistance and to obtain the advice of a lawyer when a question arises as to whether a lawyer's advice should be sought. If no one was misled that the typist or paralegal was a lawyer, and there is no evidence that the typist or paralegal counseled the debtor, then it makes no difference who referred the client to the attorney. *Cramer*, 399 Mich. 116, 249 N.W.2d at 14 (Levin, J., dissenting).

IV. *What measures might the Court employ to clearly define what services typists and paralegals may provide and to prevent typists and paralegals from providing legal assistance?*

There have been numerous suggestions concerning how the Court should deal with the problem of lay advocacy in light of the fact that many people can neither afford legal representation nor qualify for legal assistance. First, the appropriate body could regulate lay advocacy. With specific guidelines, non-attorneys would know exactly what services they could legally provide. The problem with this solution is that "any attempt to formulate a lasting, all-encompassing definition of 'practice of law' is doomed to failure 'for the reason that under our system of jurisprudence such practice must necessarily change with the everchanging business and social order.'" *Cramer*, 249 N.W.2d at 7 *citing Grand Rapids Bar Association v. Denkema*, 290 Mich. 56, 287 N.W. 377 (1939).

Second, the appropriate body could establish standards for determining when a lawyer must be employed. This solution would enable lay advocates to administer simple bankruptcies, i.e. ones meeting specific criteria, possibly with required supervision by a licensed attorney.

Third, because one of the biggest problems concerning the unauthorized practice of law

---

4. In this Court's view the organized bar, acting independently or with the Court, has an obligation to deal with this problem through such things as *pro bono* or other programs designed to meet the need.

is determining whether the unauthorized practice actually occurred, the courts could require typing services and paralegals to record the client interviews as was recommended by the court in *Calzadilla.* Tapes, unlike handwritten notes, are useful because they record entire conversations. These tapes would then be available at the first meeting of the creditors and if there were any suspicion that the unauthorized practice of law occurred, they could be analyzed.

Fourth, courts can prohibit service providers from using misleading advertising. The provider can advertise secretarial services, notary, typing, and sales of bankruptcy forms and general printed information with regard to those forms. It may sell books/printed material about bankruptcy law but may not sell or hand out selective material from such books or publications as would constitute legal advice which they are not qualified to give. *Calzadilla,* 151 B.R. at 626.

V. *What sanctions can the bankruptcy court impose on those whose act constitute the unauthorized practice of law?*

■ Bankruptcy courts have numerous sanctions they can apply to people whose acts constitute the unauthorized practice of law pursuant to the Local Rules of the United States District Court for the Eastern District of Michigan. Local Rule 12(f) states,

> Any person who, while not duly admitted to the Bar of this Court, or during his or her disbarment or suspension, exercises any of the privileges of a member of the Bar, or who pretends to be entitled to do so, may be found guilty of criminal contempt of Court and subject to appropriate punishment therefor.

Courts in other jurisdictions have enjoined the unauthorized practice of law (*Harris,* 152 B.R. at 447; *Arthur,* 15 B.R. at 548; *Bachmann,* 113 B.R. at 776; *Webster,* 120 B.R. at 115), disgorged the fees charged by a non-lawyer service provider to bankruptcy debtors (*Harris,* 152 B.R. at 447; *Arthur,* 15 B.R. at 548; *Bachmann,* 113 B.R. at 776; *Anderson,* 79 B.R. at 486; *Herren,* 138 B.R. at 996; *Matter of Martin,* 40 B.R. 695, 700 (Bankr.N.D.Ga.1984)), ordered the service providers to turn over records of all bankruptcy petitions in which non-lawyers participated in order for the trustee to determine whether fees should be disgorged (*Harris,* 152 B.R. at 447; *Arthur,* 15 B.R. at 548), ordered the service provider to pay a fine to the bankruptcy court for each instance in which unauthorized practice of law was found (*Martin,* 40 B.R. at 700), and ordered the non-lawyer service provider to pay the bankruptcy trustee's reasonable attorney fees and all costs of the proceeding including debtor's witness fees (*Webster,* 120 B.R. at 115).

For the foregoing reasons, this Court grants the Trustee's Order to Show Cause. This Court prohibits Ms. Mainardi from providing the seven services discussed in this Opinion. This Court also orders Ms. Mainardi to turnover her records of the fees she charged Debtor so that this Court may disgorge any payments for legal services. The Court will not order Ms. Mainardi to pay the bankruptcy trustee's reasonable attorney fees and costs for this proceeding, because important public policy questions are involved.

The Trustee shall prepare and present an appropriate order.