**In re Ronald SKOBINSKY, et al., Debtors.**

Civ. A. No. 93–3596.
Bankruptcy Nos. 93–12504, 93–12654 to 93–12656.

United States District Court, E.D. Pennsylvania.

April 26, 1994.

Ronald Skobinsky, pro se.

Lucille H. Colbert, pro se.

Carl W. Corbit, pro se.

Kenneth A. Love, pro se.

Charles A. Willis, pro se.

Edward A. Sparkman, pro se.

John D. McLaughlin, Office of the U.S. Trustee, Philadelphia, PA, for Frederic J. Baker.

Frederic J. Baker, pro se.

## MEMORANDUM

O'NEILL, District Judge.

### I. Factual and Procedural History

This case is before the court on a Motion to Appeal an Order by United States Bankruptcy Judge David A. Scholl entered on May 28, 1993 permanently enjoining Mr. Willis from assisting debtors in the filing of bankruptcy petitions and the collection of fees for performing such service.

Charles A. Willis d/b/a "C.A. Willis Services" ("appellant") was operating a Chapter 13 bankruptcy petition preparation service out of his home designed to facilitate debtors in the preparation and filing of Chapter 13 petitions. Appellant has assisted at least four debtors in the preparation and filing of Chapter 13 petitions.

The services appellant performed included discussing the various chapters under which a bankruptcy petition could be filed, explaining the information necessary to complete a petition, suggesting where items belong on the petition based on information provided by the debtor, and filling out and filing the petition. Although the forms were completed and filed by appellant, the debtors signed the forms pro se.

In performing these services, appellant spent approximately five hours on each customer. In exchange for performing such services, appellant charged the debtors a fee—between $0 and $175—based on each individual debtor's ability to pay. Appellant advertised his services· by mailing fliers to persons appearing on the Philadelphia County Sheriff's published list of scheduled foreclosure sales. The fliers represented that he was a notary public and paralegal, and that debtors could save their homes and money by using his services without paying the high costs of an attorney.

On May 3, 1993, Judge Scholl issued an interim Order asking appellant to voluntarily suspend his assistance of debtors and the collection of fees until the court had the opportunity to review the propriety of his operations. The Order directed appellant to answer certain questions and file them with the Clerk of the Bankruptcy Court. Appellant did not comply with the May 3 Order.

On May 17, 1993, Judge Scholl issued a second order temporarily enjoining appellant from engaging in the performance of preparation and filing services and the collection of fees for any such services pending a hearing scheduled for May 27, 1993.

On May 28, 1993, after conducting the scheduled hearing, Judge Scholl issued an Order permanently enjoining appellant from taking any action to assist debtors in the filing of bankruptcy petitions and the collection of any fees for such services. Judge Scholl found that appellant had engaged in the unauthorized practice of law in the past with respect to the debtors ·in the above captioned cases and that, unless permanently enjoined, he would be inclined to continue such practice in the future, thereby causing irreparable harm to prospective debtors.

Currently before the Court is appellant's appeal of Judge Scholl's Order dated May 28, 1993. Appellant raises the following objections in his appeal: that the bankruptcy court or the United States Trustee should have advised him to bring legal counsel to the May 27th hearing before Judge Scholl; that Judge Scholl and the United States Trustee failed to substantiate the claim that appellant engaged in the unauthorized practice of law; that as a Notary Public he is permitted to complete government forms, and that doing so is a purely clerical task that does not require any legal knowledge; that he did not assist his customers in determining under which bankruptcy Chapter they should file; that he has the experience necessary to engage in the type of activity at issue; that there exists no regulated fee structure for the type of services provided by appellant and that the bankruptcy court failed to take into account the costs of doing business; and that the May 27th hearing was not fairly conducted and that counsel for the United States Trustee misled witnesses.

## II. Discussion

### A. Standard of Review

■ This court has jurisdiction pursuant to 28 U.S.C. §§ 158, 1334.[1] The standard of review for findings of fact with respect to appeals from a bankruptcy court order is the "clearly erroneous" standard. *In re Nelson Co.*, 959 F.2d 1260, 1263 (3d Cir.1992).[2] Under this standard, a finding of fact made by the bankruptcy court must be upheld unless it is clearly erroneous. The court reviews the bankruptcy court's conclusions of law *de novo*. *Id.* at 1263.

### B. Appellant's Right to Have Counsel Present at the May 27 Hearing

■ Appellant's Plea for Appeal contends that he should have been advised to have legal counsel present at the hearing on May 27 before Judge Scholl. His support for this allegation is that it was obvious—to whom it is unclear—that an adverse judgment could be reached against him. In addition, he claims he was compelled to give damaging testimony against himself because he was not given such warning or advice.

■ Although appellant may have been benefitted by the assistance of counsel at the hearing, it is not the responsibility of the bankruptcy court of the United States Trustee to advise appellant to have legal counsel present. An individual's right to competent assistance of counsel is derived from the Sixth Amendment to the United States Constitution. This Amendment applies only to criminal proceedings, however, and does not apply to civil proceedings such as the hearing before Judge Scholl.

The purpose of the May 27th hearing before Judge Scholl was to determine whether appellant had engaged in the unlawful practice of law, charged reasonable fees for his services, was in civil contempt of the May 3rd Order, and whether the temporary injunction

1. Section 158(a) grants District Courts of the United States jurisdiction to hear appeals from final orders of bankruptcy judges. 28 U.S.C. § 158(a) (1984). Similarly, section 1334 grants district courts original jurisdiction of all matters and proceedings in bankruptcy. 28 U.S.C. § 1334(a)–(b) (1990). Therefore, this Court has jurisdiction over appellant's appeal of Judge Scholl's May 28, 1993 Order.

2. *See also In re Chase and Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990); *Lerch v. Federal Land Bank of St. Louis*, 94 B.R. 998, 1001 (N.D.Ill.1989).

against appellant should be continued. The scope of the hearing did not involve a criminal prosecution or proceeding. In addition, appellant never refused to participate in the proceedings, never requested a continuance for the purpose of obtaining counsel and never invoked his Fifth Amendment privilege against self-incrimination. Therefore, I must reject appellant's assignment of error on the part of the bankruptcy court and the United States Trustee.

### C. Judge Scholl's Alleged Failure to Substantiate Claims

■ Appellant asserts that Judge Scholl and the United States Trustee failed to substantiate the claim that appellant engaged in "the unauthorized practice of law in the third degree" with any federal or state statute.[3]

The United States Trustee has interpreted this allegation to specifically refer to criminal statutes presumably because of the "third degree" language used by appellant. If this is in fact true, it is irrelevant for purposes of this appeal that no criminal statute was cited because appellant was not tried for a criminal violation.

It is unclear, however, from appellant's brief whether appellant was in fact referring to criminal statutes or to any statutes, civil or criminal, relating to the court's authority with respect to the unauthorized practice of law. Regardless, Judge Scholl specifically cites several cases in his May 28th Order specifically holding that the type of activity engaged in by appellant is sufficient to constitute an unauthorized practice of law. *See In re Evans*, 153 B.R. 960, 966–67 (Bankr. E.D.Pa.1993) (noting unauthorized practice of law includes advising clients regarding applicable law and preparing documents requiring familiarity with legal principles beyond the knowledge of laypersons) (citations omitted); *In re Harris*, 152 B.R. 440, 445 (Bankr.W.D.Pa.1993) (holding solicitation and preparation of bankruptcy forms involves the exercise of legal judgment in excess of what

the average layperson would reasonably be expected to possess and thus constitutes the unauthorized practice of law when performed by a layperson); *In re Arthur*, 15 B.R. 541, 547 (Bankr.E.D.Pa.1981) (holding rendering of advice regarding various bankruptcy chapters and preparation of legal documents, including bankruptcy petitions, on a regular basis for a fee constitutes the unauthorized practice of law when performed by a nonattorney). As Judge Scholl did substantiate his finding that appellant engaged in an unauthorized practice of law, the only question remaining is whether such finding comports with the law.

### D. Unauthorized Practice of Law

■ In determining whether certain activity constitutes an unauthorized practice of law, bankruptcy courts look to the law of their respective states for authority. *In re Evans*, 153 B.R. at 966, citing *In re Bachmann*, 113 B.R. 769, 772–75 (Bankr.S.D.Fla. 1990). While it is true, as appellant's brief states, that the law in Pennsylvania regarding the boundaries of an unauthorized practice of law are "necessarily somewhat obscure," Pennsylvania law is clear that activities such as those found to have been engaged in by appellant constitute the unauthorized practice of law.

Pennsylvania courts have specifically held that the unauthorized practice of law includes instructing and advising clients in regard to applicable law and preparing documents requiring familiarity with legal principles beyond the knowledge of laypersons. *In re Evans*, 153 B.R. at 966–67; *In re Harris*, 152 B.R. at 445; *In re Arthur*, 15 B.R. at 547.

In addition, courts from other jurisdictions have held that the following activities constitute the practice of law in bankruptcy matters: (1) determining when to file bankruptcy cases, *In re Herren*, 138 B.R. 989, 995 (Bankr.D.Wyo.1992); (2) filling out or assisting debtors in completing form and sched-

---

**3.** Appellant appears to have misinterpreted Judge Scholl's May 28th Order. The court did not find that Appellant had engaged in an "unauthorized practice of law in the third degree," but that he had engaged in the "unauthorized practice of law." Appellant was apparently confused by the United States Trustee's question regarding Appellant's knowledge of the fact that engaging in the unlawful practice of law constitutes a third degree misdemeanor under Pennsylvania law. This fact, however, had nothing to do with Judge Scholl's finding.

ules, *In re McCarthy,* 149 B.R. 162, 166 (Bankr.S.D.Cal.1992); *In re Herren,* 138 B.R. at 994–95; *In re Webster,* 120 B.R. 111, 113 (Bankr.E.D.Wis.1990); *In re Bachmann,* 113 B.R. 769, 773–74 (Bankr.S.D.Fla.1990); *In re Glad,* 98 B.R. 976, 978 (Bankr.9th Cir.1989); and (3) advising debtors regarding the exemptions they should claim. *In re Herren,* 138 B.R. at 995; *In re Webster,* 120 B.R. at 113. Therefore, Judge Scholl's finding that appellant engaged in the unlawful practice of law comports with the law set forth in this and in other jurisdictions.

■ Finally, with regard to Judge Scholl's findings of fact, appellant testified that he discussed the various chapters with his customers, that he instructed them on how to fill out the forms and suggested what certain items were for purposes of filing, such as liens, and secured and unsecured debt, and where those items should be placed on the forms. He also testified that he actually filled out the forms in some cases, and that he filed the forms with the clerk of the bankruptcy court on his customers' behalf. In addition, appellant acknowledged that he instructed debtors not to fill out the "exemptions" schedules in their petitions based upon his erroneous interpretation of the applicable bankruptcy law.

Judge Scholl's findings of fact that appellant filled out and assisted debtors in filling out bankruptcy forms and that he advised debtors under which Chapter they should file are supported by appellant's own testimony and therefore are not clearly erroneous.

### E. Authority of Notary Public and Clerical Nature of Completing Bankruptcy Petitions

■ Appellant next alleges that as a notary public he is authorized to fill out government forms with information supplied by a client. In addition, he asserts that complet-

ing such forms does not constitute the unlawful practice of law because such activity is purely clerical in nature and does not require a legal background.

Appellant has failed to demonstrate how his notary public commission entitles him to assist debtors in filing bankruptcy petitions. Moreover, appellant's allegation regarding the clerical nature of completing bankruptcy forms is irrelevant because such activity has been held specifically to constitute the unauthorized practice of law. *See In re Herren,* 138 B.R. at 994–96 (holding that providing specific directions regarding correct way to fill out bankruptcy forms, including what items to list where and defining legal terms, constitutes unauthorized practice of law when performed by layperson); *In re Webster,* 120 B.R. at 113–14 (holding layman who advises debtor regarding completion of bankruptcy petition engages in unauthorized practice of law).[4] I therefore reject plaintiff's objections.

### F. Assisting Customers in Determining Under Which Bankruptcy Chapter to File

■ Appellant next alleges that he did not assist his customers in deciding under which Chapter to file, but that they had decided to file Chapter 13 forms prior to consulting with him. Contrary to these assertions, the bankruptcy court found that appellant did in fact advise his customers under which Chapter to file. The court's finding is supported by testimony of appellant's customers at the hearing on May 27, which established that appellant discussed the various chapters under which relief could be sought with at least one of his customers. In addition, appellant acknowledged discussing with his customers the course of action available to them as well as to spending five to six hours, on average, with each individual customer.

---

4. *See also In re Bachmann,* 113 B.R. at 773 (holding that secretarial service may type bankruptcy forms for clients provided it only involves copying the information given in writing by clients; it may not advise clients as to available remedies, make inquiries or answer questions from clients regarding which forms are necessary and how to best fill them out, or otherwise assist them in preparing the forms); *In re Glad,* 98 B.R. at 978 (holding nonattorney who solicited information from the debtor regarding completion of bankruptcy petition engages in unauthorized practice of law); *In re Arthur,* 15 B.R. at 547 (holding a layman's preparation of various legal documents, including petitions, on a regular basis for a fee constitutes unauthorized practice of law).

I also agree with the United States Trustee that given the lack of legal sophistication of appellant's customers, it is likely that they did in fact take into account appellant's information regarding the operation of the various Chapters in determining the most appropriate Chapter under which to file based on their individual situation. Therefore, I find that the bankruptcy court's determination that appellant assisted his customers in deciding under which Chapter to file was not clearly erroneous.

### G. Appellant's Experience

■ Appellant also asserts that the information required to complete a Chapter 13 petition is the same as that required on a consumer loan or mortgage application and that he has over twenty-five years experience in the consumer lending and mortgage field. He also claims that such information can be provided without any legal decision or advice.

■ Contrary to appellant's assertion, his experience with respect to the lending field is irrelevant to the determination of whether he engaged in the unauthorized practice of law. An unauthorized practice of law violation occurs whenever a person engages in activity restricted to the purview of a licensed practitioner of law. Therefore, unless appellant is a duly licensed attorney, his experience is irrelevant to this appeal.

In addition, appellant's testimony regarding the applicability of personal property exemptions in a Chapter 13 case establishes the necessity of some degree of legal interpretation and advice in completing bankruptcy petitions. Appellant erroneously concluded that personal property exemptions were not available in a Chapter 13 case and incorrectly advised his customers not to complete the relevant exemption schedules. Therefore, appellant's assertion that he has sufficient experience to engage in the activity at issue is questionable.

5. For example, appellant refers to the following statements made by Judge Scholl in his *In re Evans* decision:

We strongly believe that this Court's failure to monitor lay advocates would create potential havoc, which is perhaps most graphically illus-

### H. Regulated Fee Structure

■ Next, appellant alleges that there is no regulated fee structure for the type of services he provided and that the bankruptcy court failed to take his costs of doing business into account. Appellant's allegation seems to relate to the reasonableness of his fees. While it is true that no such regulation exists, professional fees in bankruptcy cases are always subject to the scrutiny of the bankruptcy court. 11 U.S.C.A. §§ 326, 328–31; F.R.B.P. Rule 2016. *See also In re Delaware River Stevedores, Inc.,* 147 B.R. 864, 868–870 (Bankr.E.D.Pa.1992) (bankruptcy courts must always review hourly rates charged by professionals); *In re Rheam of Indiana, Inc.,* 137 B.R. 151, 155–59 (Bankr. E.D.Pa.) (bankruptcy court has power to review all fee applications *sua sponte*), *rev'd on other grounds,* 142 B.R. 698 (E.D.Pa. 1992). The reasonableness of such fees are determined by the number of hours expended times the ordinary hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *In re Meade Land & Dev. Co.,* 527 F.2d 280 (3d Cir.1975).

In addition, the bankruptcy court's Order entered on May 28, 1993, did not expressly find that appellant's fees were improper, nor did it order disgorgement of the fees paid. Therefore, it is irrelevant for purposes of this appeal that the bankruptcy court failed to consider the appellant's costs of doing business.

### I. Alleged Partiality of Bankruptcy Court

■ Appellant contends that the May 27th hearing was not impartially conducted. However, appellant fails to provide any basis for this assertion. It appears from his brief that his concern lies with certain published opinions of Judge Scholl suggesting to appellant that a fair trial on the issue of lay advocates in bankruptcy is not possible.[5]

trated by the proliferation of "bankruptcy mills" in southern California, to which about 30,000 1992 bankruptcy filings were attributed.... This court deems it highly appropriate for it to act before comparable entities improperly gain any foothold whatsoever in

In challenging the impartiality of a Judge, the challenging party must file a motion pursuant to 28 U.S.C. § 144 or § 455.[6] Section 144 requires the challenging party to file an affidavit stating the facts and reasons for such belief not less than ten days before the beginning of the term at which the proceeding is to be heard. 28 U.S.C. § 144; *see In re Johnson–Allen,* 68 B.R. 812, 814 (Bankr.E.D.Pa.1987). The affiant has the burden of showing that the facts are material and stated with particularity; that such facts, if true, would convince a reasonable man that a bias exists; and that such facts show that the bias is personal, as opposed to judicial in nature. *In re Johnson–Allen,* 68 B.R. at 815 (citations omitted). Despite the fact appellant has failed to file the appropriate affidavit, I will address the sufficiency of his allegations.

I conclude that appellant's allegations are insufficient to raise the question of impartiality on the part of Judge Scholl. It has long been held that rulings by a court are an insufficient basis for bias and prejudice since they are subject to appeal and, if erroneous, can be corrected through the appellate process.[7] *In re Shuma,* 124 B.R. 446, 449 (W.D.Pa.1990) (citations omitted).

Moreover, after reviewing appellant's claims on appeal, appellee's brief, the supporting documentation of both parties, and the bankruptcy court decision, I find no evidence of unfair or partial conduct on the part of Judge Scholl or in the proceedings themselves. Therefore, appellant's allegations fail

to satisfy the first element required to prove impartiality.

Furthermore, evidence of personal bias or prejudice against an alleged class, of which the challenging party claims to be a member is insufficient to provide a basis for a partiality claim. *In re Johnson–Allen,* 68 B.R. at 816–17. Therefore, appellant's claim of partiality must also fail because of the lack of any bias alleged against appellant personally.

The only bias alleged is a general bias against lay advocates and this is insufficient to constitute a reasonable factual basis for doubting Judge Scholl's impartiality. Thus, appellant's allegations also fail the second and third elements necessary to prove impartiality.

Finally, with respect to appellant's challenge to the judicial proceedings themselves, judicial rulings alone and matters arising from judicial proceedings are almost never a proper basis for bias or partiality motions. *Liteky v. United States,* —— U.S. ——, ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also Smith v. Danyo,* 585 F.2d 83, 87 (3d Cir.1978) (noting alleged bias must be based on extrajudicial sources, rather than on judicial actions which can be corrected on appeal), *Bumpus v. Uniroyal Tire Co., Division of Uniroyal, Inc.,* 385 F.Supp. 711 (E.D.Pa.1974) (personal bias or prejudice must arise from extrajudicial origin, prior court rulings do not provide sufficient factual basis).

---

this district.... One of our important concerns in our investigation of the practices of lay advocates, *sua sponte* if necessary, is to determine whether lay advocates purporting to assist debtors are not themselves in fact additional vulture-predators who will siphon off funds of debtors....
*In re Evans,* 153 B.R. at 966–67.

6. Section 144 requires the disqualification of a judge for "personal bias or prejudice." 28 U.S.C. § 144. Section 455, on the other hand, requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455.

7. The Supreme Court recently set forth two exceptions to this general rule in *Liteky v. United States,* —— U.S. ——, ——–——, 114 S.Ct. 1147, 1155–59, 127 L.Ed.2d 474 (1994), *aff'g* 973 F.2d 910 (11th Cir.1992). Grounds for disqualifica-

tion are insufficient where they consist of judicial rulings and anything occurring in the course of judicial proceedings, unless such grounds result upon the reliance of knowledge acquired outside such proceedings, and display a deep-seated and unequivocal antagonism that would render fair judgment impossible. *Id.* These exceptions, however, are not applicable to this case because there is no evidence that Judge Scholl relied upon outside knowledge in deciding the case against appellant. In addition, the statements relied upon by appellant—equating lay advocates purporting to assist debtors, yet *improperly engaging in the unauthorized practice of law,* with "vulture-predators who will siphon off funds of debtors"—do not display the deep-seated and unequivocal antagonism that would render a fair judgment impossible.

As previously stated, I find no evidence that the bankruptcy court proceedings were not fairly or impartially conducted. In addition, appellant has failed to allege any facts to support his allegations. Also, as the United States Trustee's Brief points out, the hearing was conducted in open court with reasonable advance notice, the Federal Rules of Evidence were properly applied, and appellant had the opportunity to cross-examine all witnesses, and to present any evidence and statements in support of his position. *See* United States Trustee's Brief, at 15.

**J. Misleading of Witnesses**

 Finally, appellant asserts that counsel for the United States Trustee fraudulently misled witnesses at the May 27, 1993 hearing by his phrasing of a particular question regarding payments related to debt counseling or bankruptcy. The hearing transcript shows that counsel for the United States Trustee referred the witness to item nine of the Statement of Financial Affairs which relates to payments involving debt counseling or bankruptcy and merely asked them how they responded to that question on the Statement and why. *See* Transcript p. 47, 77.

The transcript also demonstrates that the form of the question posed to both of the witnesses was open-ended and not leading. *See* Transcript p. 77. Therefore, at least as to the form of the question, appellant's assertion that counsel for the United States Trustee knowingly misled the witnesses must fail.

In addition, contrary to their actual completion, the petitions filed by the witnesses should have listed the fee paid to appellant for his bankruptcy services in item nine. As appellant points out in his brief, item nine reads: "List all payments made or property transferred by or on behalf of the debtor to any person, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within one year immediately *preceding* the commencement of *this* case." Appellant's Brief (emphasis in original). Appellant seems to suggest that his fee should not have been listed in item nine since he rendered services after commencement of the case. What appellant fails to realize, however, is that a bankruptcy case commences upon the filing of the petition. Appellant rendered his services and was paid by his customers prior to filing their petitions, and hence "immediately preceding their case." Thus, counsel for the United States Trustee did not mislead the witnesses since the fee paid to appellant appropriately should have been listed in item nine of the Statement of Financial Affairs.

*ORDER*

And now this 25th day of April, 1994, upon consideration of the appeal of Charles Willis d/b/a C.A. Willis Services, the supporting and opposing memoranda thereto and the record on appeal, including the transcript of the hearing before United States Bankruptcy Judge Scholl conducted on May 27, 1993, it is hereby ORDERED that the ORDER of United States Bankruptcy Judge David Scholl, dated May 28, 1993, is AFFIRMED.