**In re Troy Wyatt GAVIN and Bridgette A. Gavin, Debtors.**

**Thomas E. ROSS, United States Trustee, Plaintiff,**

**v.**

**Patricia SMITH, Individually and as Agent for Legal Aid Services and Tracey Russell a/k/a Tracy Russell, Individually and as Agent for Legal Aid Services and Legal Aid Services a/k/a Legal Aide Services a/k/a Legal Aid Service a/k/a Worldwide Legal Aid Services, Defendants.**

**In re Denise Rose FULGINITI a/k/a Denise R. Fulginiti, Denise Fulginiti, Debtor.**

**Bankruptcy Nos. 95–11698DAS, 95–12649DAS.**
**Adv. No. 95–0159DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 11, 1995.

Order Recommending Additional Award June 15, 1995.

Arthur P. Liebersohn, Philadelphia, PA, Trustee in Fulginiti Case.

Christine C. Shubert, Tabernacle, NJ, Trustee in Gavin Case.

David M. Offen, Philadelphia, PA, for Catalina Alde.

John J. Maioriello, Philadelphia, PA, for the Grisoglios.

Mitchell W. Miller, Miller & Miller, Philadelphia, PA, Trustee in Alde Case.

Edward Sparkman, Philadelphia, PA, Trustee in Grisoglio Case.

John J. McLaughlin, Asst. U.S. Trustee, Office of U.S. Trustee, Philadelphia, PA.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Resolution of the above-captioned adversary proceeding and related matters arising out of two separate bankruptcy cases requires analysis of 11 U.S.C. § 110, a Code section enacted as part of the Bankruptcy Reform Act of 1994 to regulate the conduct of lay persons who assist debtors in preparing bankruptcy petitions for compensation. It is clear that four separate requirements of this Code section, §§ 110(b)(1), (c)(1), (f)(1), and (h)(1), were patently violated by the bankruptcy preparers in issue, "Legal Aid Services" ("LAS") of Palmdale, California, and its principals, in their dealings with at least two debtors filing bankruptcy cases in this jurisdiction.

We find that not only are monetary recoveries for the victimized Debtors warranted, but also that a strong probability remains that these violations will continue in other jurisdictions if LAS is not enjoined from continuing to do business in all jurisdictions in the United States. Therefore, we will enter an Order (1) imposing a $1,000 fine on LAS and its principals, as authorized by 11 U.S.C. §§ 110(b)(2), (c)(3), (f)(2), and (h)(2); (2) certifying the underlying facts to the district court, via this Opinion, for payments of $2,000 to each of the Debtors, pursuant to 11 U.S.C. § 110(i)(1)(B)(i); and (3) enjoining LAS and its principals from acting as bankruptcy preparers in any jurisdiction unless they petition a particular court for permission to do so.

## B. FACTUAL AND PROCEDURAL HISTORY

On March 6, 1995, TROY WYATT GAVIN and BRIDGETTE A. GAVIN ("Ms. Gavin", collectively, "the Gavins"), filed a joint Chapter 7 bankruptcy petition *pro se* in this court. When filing their case as a *pro se* Debtor, Ms. Gavin was required to complete a Local Bankruptcy Form ("L.B.F.") 2016.1.[1] On this form Ms. Gavin disclosed that the Gavins had paid a $400 fee to "Tracey Russell" at an address in Palmdale, California, for assistance in filing their bankruptcy case.

Investigation by our Courtroom Deputy yielded the name of LAS as the entity which had assisted the Gavins, and Patricia Smith as the local LAS employee, who had interviewed Ms. Gavin at a Center City Philadelphia office address. On March 13, 1995, we *sua sponte* entered an Order providing in part as follows:

1. Patricia Smith and "Legal Aid Services" ("Legal Aid") are hereby temporarily ENJOINED from assisting any parties in filing bankruptcy cases and from charging any persons for assisting them in filing bankruptcy cases in this jurisdiction pending [a] hearing scheduled [on March 23, 1995].

2. An appropriate agent of Legal Aid is DIRECTED to file with this court and serve upon this court in chambers at the address below, a written response to the following inquiries, on or before March 17, 1995:

a. What services it claims to have performed for the Debtors to justify the charges imposed;

b. Why the sums charged should not be refunded;

c. The names of any other cases in which Legal Aid has charged fees, but has not entered its appearance for debtors in this and any other jurisdiction.

3. A hearing to determine whether the above temporary restraining Order shall be made permanent and/or extended to Legal Aid's activities in other jurisdictions is scheduled on

THURSDAY, MARCH 23, 1995, at 9:30 A.M....

On March 22, 1995, Smith belatedly delivered a "Response" to the questions posed in the Order of March 13, 1995, in open court and was advised to return to the hearing on the following date. The Response, indicating that it was prepared by Scott Johnson, iden-

---

1. Local Bankruptcy Rule 2016.1(c) thusly provides that all *pro se* debtors must complete and file a L.B.F. 2016.1:

(c) In all *pro se* cases, at the time the petition is filed, the clerk shall require the debtor to complete a statement on Local Bankruptcy Form 2016.1 setting forth all persons or business entities form whom the debtor received assistance and/or to whom the debtor paid or agreed to pay money in connection with the case.

L.B.F. 2016.1 reads as follows:

STATEMENT OF PRO SE DEBTOR(S)

Debtor_____ Case No. _____
Telephone Number (home) _____ Date Case Filed: _____
Telephone Number (work) _____ Date Form Submitted_____

1) Name and Address of Any Person or Business assisting Debtor in filing or preparing papers in this case:

2) How referred to Person or Business named above

3) Fee charged by Person or Business named above $_____
4) Were various Chapters of Bankruptcy explained?

_____ _____ Other Comments_____
Yes No

Signature of Debtor(s)

Deputy Clerk

tified as an Administrative Assistant of "Legal Aide Services," included the following excerpts:

In response to inquiry (a) ...: Legal Aide Services prepared all the Chapter 7 documents based upon information the debtor's [sic] provided. The debtor's [sic] requested top priority on the completion of their paperwork. Their Chapter 7 Bankruptcy forms were completed and sent to debtor's [sic] within 4 working days of the Processing Center.

Based upon past experience in regards to the time, man power and comparison to similar document preparation services, the fee of $400.00 is a [sic] adequate fee for a priority file.

In response to inquiry (b) ...:

Legal Aide Services provided the service the debtor's [sic] requested. The document preparation was processed per debtor's [sic] request on a priority basis. The debtor's [sic] received their paperwork in a timely manner without any complaints about the services rendered or the fee they were charged.

In response to inquiry (c) ...:

Legal Aide Services has not prepared and/or charged fees for document preparation, in regards to additional cases in this jurisdiction.

On March 14, 1995, Assistant United States Attorney John D. McLaughlin, Jr. ("the AUST") filed the above-captioned adversary proceeding ("the Proceeding"), naming this Circuit's United States Trustee, Thomas E. Ross, as plaintiff, and Smith, Russell, and LAS as defendants. The Complaint demanded injunctive relief, disgorgement of compensation, and relief under 11 U.S.C. §§ 110(b), (c), (f), and (i). The trial of the Proceeding was scheduled on May 4, 1995.

The AUST, Smith, and Ms. Gavin appeared at the hearing of March 23, 1995. Ms. Gavin testified that she contacted LAS by phone after receiving advice from a private law firm which she consulted that she and her husband should contact "legal aid" for assistance. The firm obviously intended to refer the Gavins to a local provider for free or reduced cost legal services, such as Community Legal Services, Inc. Ms. Gavin obviously believed, in light of its name, that LAS was such a provider. An individual employed by LAS named Keith Jackson, situated in California, made an appointment for Ms. Gavin to meet with Smith in Philadelphia. Jackson told Ms. Gavin to bring a list of her creditors and the $400 fee to the appointment. Several days later, on January 24, 1995, Ms. Gavin met with Smith in the Center City office, which Ms. Gavin believed was a law office. Ms. Gavin was instructed by Smith to fill out some forms requesting certain financial information. After attempting to do so, Ms. Gavin was taken to an office where she paid Smith the $400, gave Smith the forms which she had filled out, received some printed information relating to bankruptcy, and was advised to call one Tracy Russell in California if she had other further questions or was harassed by the Gavins' creditors. Ms. Gavin estimated that the interview with Smith took 30 to 45 minutes.

Although Jackson had promised that, if she paid $400, the bankruptcy filing would be expedited, the process was thereafter delayed when Ms. Gavin received back the papers with several errors and had difficulty reaching Russell to make corrections. Over a month after she visited Smith, Ms. Gavin received one copy of a finished bankruptcy petition and Schedules, which Ms. Gavin was obliged to copy and file herself with the bankruptcy court, paying the $160 filing fee.

Ms. Gavin testified that neither of the Gavins have any legal training or knowledge of bankruptcy. Although trained as a cosmetologist, Ms. Gavin has three young children which apparently preclude her employment at present, including a baby born after she initially consulted Smith in late January 1995. Ms. Gavin admittedly had no knowledge of the different bankruptcy Chapters, and no concept of exemptions or those to which she was entitled, or of the proper classifications of her various debts, or of her ability to reaffirm debts. Nor did she indicate that any of these matters were explained to her by Smith, Russell, or any of the LAS personnel. Ms. Gavin noted that Smith had given her a business card identify-

ing Smith as a "paralegal assistant." Ms. Gavin stated that she knew that Smith was not an attorney, but she believed that Russell was either an attorney or was being supervised by an attorney. Neither LAS nor any of its principals were identified on the bankruptcy forms prepared by LAS to be filed, and the $400 fee paid by the Gavins to LAS was not disclosed on the forms. Ms. Gavin was displeased with the service of LAS because she felt that it had not kept its commitment to prepare the Gavins' bankruptcy case promptly.

Smith also appeared at the hearing without legal counsel, and testified regarding her experiences with LAS. She stated that she had dropped out of high school, but obtained her graduate equivalency degree in 1990. She further stated that, in 1992, she had attended an institution known as the National Education Center ("NEC"), where she had been trained as a medical assistant. She obtained her employment with LAS by means of a referral from NEC, being hired after a telephone interview with Jackson which Smith estimated as taking no more than five to ten minutes.

Smith described LAS's method of operations. She stated that she was called weekly by Jackson and given the names of various clients who had contacted LAS for its various services, which included a range of domestic relations matters, evictions, wills, and immigration matters, as well as bankruptcies, and was instructed by Jackson to meet these clients at certain pre-arranged times at a center city office. Smith was to be paid $10/hour for her services. Smith received no training and the business card identifying her as a "paralegal assistant," which she was advised to distribute, was prepared and sent to her by LAS. Smith did not claim any legal or bankruptcy knowledge or experience, and was disappointed that NEC had given her a referral outside of the medical field.

Smith also indicated that, since January 1995, when she began working with LAS, her office location had been changed, and that, as of March 21, 1995, she had been asked to leave her new location, due to nonpayment of rent. She stated that Jackson had asked her to look for more office locations, which she

had done. However, when Smith discovered that the AUST had named her as a defendant in the Proceeding, she became anxious to separate herself from LAS and to stay out of trouble. Smith indicated that she had no contact with Ms. Gavin after the initial interview, and had never spoken with Russell.

We found the testimony of Smith and Ms. Gavin to be completely consistent and totally credible.

Examination of the Gavins' bankruptcy papers revealed several obvious errors. A student loan was listed as an "unsecured priority" claim. A loan balance of $7,000 on a "Suzuki Bike" valued at $4,500 was listed as totally secured in the amount of $7,000. Although the lease of a 1993 Mazda Protege automobile was referenced, the lease was not identified as an executory contract and the Gavins' future intention regarding this contractual arrangement, *i.e.*, whether to assume or reject it, was undisclosed.

Upon completion of the hearing, this court entered an Order of March 24, 1995, stating in pertinent part as follows:

finding that the services provided by LAS to the Debtors were of extremely poor quality and constituted the unauthorized practice of law, see *In re Skobinsky*, 167 B.R. 45, 49–51 (E.D.Pa.1994); and *In re Evans*, 153 B.R. 960 (Bankr.E.D.Pa.1993), and appear to have violated numerous provisions of 11 U.S.C. § 110, it is ORDERED AND DECREED as follows:

1. LAS, Patricia Smith, Tracy Russell, Keith Jackson, Scott Johnson, and all persons acting in concert with them, are permanently ENJOINED from assisting any parties in filing bankruptcy cases and from charging any persons for assisting them in filing bankruptcy cases in this jurisdiction, as it appears that they were engaging in the unauthorized practice of law, see *Skobinsky, supra*, 167 B.R. at 49–51, and were providing services of poor quality and of very limited value.

2. LAS, Tracy Russell, Keith Jackson, and Scott Johnson are found jointly and severally liable to refund the $400 paid to LAS by the Debtors for the "services" provided and are DIRECTED to refund

the $400 to the Debtors which they accepted and provide evidence of same to the United States Trustee and the court in chambers on or before April 10, 1995.

3. The court has become aware that the United States Trustee has filed [the Proceeding], a copy of the Complaint which is attached hereto, which seeks broader injunctive relief and more extensive damages against LAS and certain individuals. The trial of [the Proceeding] is scheduled on

THURSDAY, MAY 4, 1995, AT 9:30 A.M. . . . .

On April 7, 1995, DENISE ROSE FULGINITI ("Fulginiti") filed an individual Chapter 7 bankruptcy case in this court *pro se*. On her L.B.F. 2016.1 Fulginiti disclosed that she had paid "Tracey Russell" of "Legal Aid" $300 for assistance in filing her bankruptcy case. Upon becoming aware of this filing, we entered an Order on April 12, 1995, providing in pertinent part as follows:

this case was filed on April 7, 1995, subsequent to the Orders of March 13, 1995, and March 24, 1995, entered in [the Gavins' case], enjoining "Legal Aide" and its officers (including Tracy Russell), from assisting any parties in filing bankruptcy cases and from charging any persons for assisting them in filing bankruptcy cases in this jurisdiction, . . . and [since] therefore it appears that "Legal Aid," Russell, and the other parties named in the March 24, 1995, Order may have acted in contempt of those Orders, it is ORDERED as follows:

1. Legal Aide Services ("LAS"), Tracy Russell, Keith Jackson, Scott Johnson, are found jointly and severally liable to refund the $300 paid to LAS by the Debtor for the "services" provided and are DIRECTED to refund the $300 to the Debtor which they apparently accepted and provide evidence of the repayment to the United States Trustee and the court in chambers on or before April 21, 1995.

2. A hearing to determine whether a decree in civil or criminal contempt should be imposed upon LAS, Tracy Russell, Keith Jackson, and/or Scott Johnson, pursuant to Federal Rule of Bankruptcy Procedure 9020(b), for their actions in this case, as well as their apparent failure to comply with . . . our Order of March 24, 1995, in [the Gavins' case], shall be conducted, with a trial in [the Proceeding,] on

THURSDAY, MAY 4, 1995, AT 9:30 A.M . . .

On April 14, 1995, we received copies of letters signed by Johnson indicating that refunds of $400 and $300 had been paid to the Gavins (belatedly) and Fulginiti, respectively. However, despite our having forwarded the Complaint to, *inter alia,* Johnson, with a copy of our Order of March 24, 1995, to which the remittance was a partial response, no Answer or other responsive pleading to the Complaint in the Proceeding was filed. A motion of the AUST to compel response to discovery requests forwarded to LAS on March 20, 1995, was scheduled on May 4, 1995, and was also unanswered. On May 10, 1995, we received a letter dated April 21, 1995, but contained in an envelope postmarked May 3, 1995, from Johnson requesting that, since LAS had closed its Pennsylvania office and refunded the sums paid to the Gavins and Fulginiti, the hearing of May 4, 1995, should be taken off the list. This letter arrived several days after the hearing/trial of May 4, 1995, at which the AUST, Fulginiti and her mother Mary Berardo, and Smith appeared, had already been conducted, and of course could not be honored. In any event, defendants clearly have no right to unilaterally halt a lawsuit against them.

Berardo testified that, on behalf of Fulginiti, she had been advised by neighbors to call "legal aid" to get legal help for her daughter in filing a bankruptcy case to eliminate combat bills which she had accumulated during a failed marriage. Attempting to receive free or low-cost (legal) services for her daughter, Berardo contacted LAS, expecting, because of its name, to receive such services. Instead, she reached Jackson of LAS, who told her to have her daughter make a list of her creditors and take that and $300 to an appointment in Center City with Smith in late January 1995. Both Berardo and Fulginiti indicated that, like Ms. Gavin, they had no training in law or bankruptcy, and no knowledge about different bankruptcy Chapters, exemptions, or classifications of indebted-

nesses. Fulginiti also indicated that her bankruptcy papers were completed only after several contacts with Russell, and that her matter was delayed significantly by the fact that the papers were sent back and forth to California several times.

Smith also again appeared alone on behalf of LAS on May 4, 1995, indicating that she had not worked any further for LAS in the interim. She expressed additional dissatisfaction with LAS due to its failure to pay her about $60 in wages due. Smith testified that she had interviewed and receipted payment from Fulginiti on the same day that she had met with Ms. Gavin, January 24, 1995, and therefore had not dealt with Fulginiti after our March 13, 1995, and March 24, 1995, Orders. Fulginiti verified this by stating that she recalled that a pregnant woman (apparently Ms. Gavin) was present on the date that she saw Smith. Since Smith's testimony was both credible in and of itself and was supported by Fulginiti, we conclude that the Fulginiti filing was not in contempt of the March Orders, as it appeared may have been the case when we entered our Order of April 7, 1995.

Expressing an intention to distance herself from LAS, Smith submitted all of the materials given to her by LAS and lists of all of her "clients" to the court. Smith also indicated that money had been collected for LAS from two other of her bankruptcy clients, whom she could identify only by their home telephone numbers and the names "Catalina" and "Lewis Grisoglio."

Investigation again undertaken by our Courtroom Deputy indicated that a Catalina Alde, also known as Catalina B. Tagle, filed an individual Chapter 7 bankruptcy case on February 14, 1995, and that Louis A. Grisoglio and his wife Emma filed a joint Chapter 13 bankruptcy case on April 5, 1995. Both of these debtors were represented by private counsel in their filings. Mr. Grisoglio verified that he had consulted LAS, but denied payment of any fees to that entity. A relative of Alde indicated that she was away at present, but would contact the Courtroom Deputy on her return.

At the close of the May 4, 1995, hearing, the AUST argued vigorously that the appar-

ent large-scale operations conducted by LAS manifested precisely the sort of entity targeted by 11 U.S.C. § 110. Therefore, he urged that this court should fine LAS at least $1,500; certify the underlying facts to the District Court in support of a $2,000 penalty in favor of both the Gavins and Fulginiti; and permanently enjoin LAS from assisting any persons in filing bankruptcies in all jurisdictions in the United States.

## C. DISCUSSION

Prior to the enactment of 11 U.S.C. § 110, this court and other bankruptcy courts had a few vital, but imprecise, weapons with which it could control the efforts of untrained persons seeking to profit at the expense of individuals seeking bankruptcy protection who were financially unable to hire lawyers to do so. First, it was argued that 11 U.S.C. § 329 and Federal Rules of Bankruptcy Procedure ("F.R.B.P.") 2016 and 2017 applied to all parties charging for services in bankruptcy cases, and was not confined to attorneys. *See, e.g., In re Fleet,* 95 B.R. 319, 337–38 (E.D.Pa.1989); and *In re Evans,* 153 B.R. 960, 966 (Bankr.E.D.Pa.1993). Based upon this authority, the fee arrangements of such lay advocates can be reviewed. Second, it was posited that the inherent ability of bankruptcy courts to regulate practice before them empowered such courts to prevent the unauthorized practice of law by lay persons in cases filed in the bankruptcy courts. *See, e.g., In re Skobinsky,* 167 B.R. 45, 49 (E.D.Pa.1994); and *Evans, supra,* 153 B.R. at 966.

The *Skobinsky* court, 167 B.R. at 49–50, identified the following activities in bankruptcy cases as the unauthorized practice of law: (1) determining when to file bankruptcy cases, *In re Herren,* 138 B.R. 989, 995 (Bankr.D.Wyo.1992); (2) filling out or assisting debtors in completing forms and schedules, *In re McCarthy,* 149 B.R. 162, 166 (Bankr.S.D.Cal.1992); *In re Herren,* 138 B.R. at 994–95; *In re Webster,* 120 B.R. 111, 113 (Bankr.E.D.Wis.1990); *In re Bachmann,* 113 B.R. 769, 773–74 (Bankr. S.D.Fla.1990); *In re Glad,* 98 B.R. 976, 978 (9th Cir. BAP 1989); and (3) advising debtors regarding the exemptions they should claim. *In re Herren,* 138 B.R. at 995; *In re Webster,* 120 B.R. at 113....

Considerably longer lists have been developed in more recent cases, *e.g.,* the following

litany appearing in *In re Samuels*, 176 B.R. 616, 622 (Bankr.M.D.Fla.1994):

(1) Determining when to file bankruptcy cases. *In re Herren*, 138 B.R. 989, 995 (Bankr.D.Wyo.1992).

(2) Deciding whether to file a Chapter 7 or a Chapter 13. *In re Arthur*, 15 B.R. 541, 543 (Bankr.E.D.Pa.1981).

(3) Filling out or assisting debtors in completing forms or schedules. *In re Glad*, 98 B.R. 976, 978 (9th Cir. BAP 1989); *In re McCarthy*, 149 B.R. 162, 166 (Bankr.S.D.Cal.1992); ... *Bachmann, supra*, at 773–4; [*In re*] *Calzadilla*, [151 B.R. 622,] at 625 [(Bankr.S.D.Fla.1993) (en banc)].

(4) Solicitation of financial information and preparation of schedules. *Herren, supra* at 994; *In re Grimes*, 115 B.R. 639, 643 (Bankr.D.S.D.1990).

(5) Providing clients with definitions of legal terms of art. *Herren, supra* at 995.

(6) Advising debtors which exemptions they should claim. *McCarthy, supra* at 166; *In re Webster*, 120 B.R. 111, 113 (Bankr.E.D.Wis.1990).

(7) Preparing motions and answers to motions. *McCarthy, supra* at 166; *Webster, supra* at 113.

(8) Advising debtors on dischargeability issues. *Arthur, supra*, at 543.

(9) Advising debtors concerning the automatic stay. *Arthur, supra* at 543.

(10) Habitual drafting of legal instruments for hire. *Arthur, supra* 543.

(11) Correcting "errors" or omissions on bankruptcy forms. *Calzadilla, supra* at 625.

(12) Advising clients as to various remedies and procedures available in the bankruptcy system. *Calzadilla, supra* at 625.

*Accord, In re Bright*, 171 B.R. 799, 802–03 (Bankr.E.D.Mich.1994).

In *Evans*, (charitably) assuming as true the lay advocate's position there that he provided only typing services and a reference book, we held that the charges of more than $100 per customer for such services were unjustified. 153 B.R. at 969–72. It should be noted, however, that we further held there that, if we had been able to make an unqualified finding that the *Evans* lay advocate, or any other lay advocate, had in fact engaged in the unauthorized practice of law, then all fees received would have to be disgorged as fruits of illegal and improper actions, irrespective of the *quantum meruit* value of such services. *See id.* at 969. *See generally Skobinsky, supra.*

Injunctive relief, precluding future unauthorized practice of law, see *Skobinsky, supra*, 167 B.R. at 47, has also been deemed appropriate in cases where the lay advocates in issue were found to have repeatedly engaged in such actions. We also note that, in *In re Weatherley*, 1993 WL 268546 (E.D.Pa. July 15, 1993), the District Court affirmed an injunction entered by this court which precluded a lay advocate organization from receiving compensation for assisting parties in preparing bankruptcy cases in *any* jurisdiction in the United States pending compliance with a court order to make a refund to a debtor.

■ It seems clear that 11 U.S.C. § 110 was not enacted to pre-empt these traditional bankruptcy court remedies, but to reinforce their propriety and add some very specific weapons to the bankruptcy court's arsenal in remedying certain specific inappropriate conduct by lay advocates. *See* 11 U.S.C. § 110(k) (Code section § 110 does not permit activities which are prohibited as unauthorized practice of law); and *In re Lyvers*, 179 B.R. 837, 839–40 (Bankr.W.D.Ky.1995) (court analyzes lay advocates' unauthorized practice of law independently from its violations of 11 U.S.C. § 110).

With these perspectives explained, we turn to analysis of § 110. That Code section requires seven specific acts of petition preparers, set forth in §§ 110(b)(1), (c)(1), (c)(2), (d)(1), (e)(1), (f)(1), (g)(1), (h)(1) as follows:

(b)(1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address.

. . . . .

(c)(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.

. . . . .

(c)(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

.    .    .    .    .

(d)(1) A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.

.    .    .    .    .

(e)(1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.

.    .    .    .    .

(f)(1) A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or adverse under any category that includes the word "legal" or any similar term.

.    .    .    .    .

(g)(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connections with filing the petition.

.    .    .    .    .

(h)(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

.    .    .    .    .

The penalty for violation of any of the foregoing is a fine of not more than $500 for each failure to comply, although §§ 110(b)(2), (c)(3), and (d)(2) allow the preparer to avoid the fine if it shows that "the failure is due to reasonable cause." Also, the fine for a violation of § 110(h)(1) may be imposed only if the preparer fails to make the refund within 30 days after a court directive to do so. § 110(h)(4).

In addition to fines, § 110(i) provides for statutory penalties in favor of debtors and counsel acting on their behalf invoking § 110 as follows:

(i)(1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, including papers specified in section 521(1) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, *or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act,* the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred (emphasis added).

Finally, § 110(j) thusly provides for the issuance of injunctive relief:

(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee, in the district in which the bankruptcy petition preparer resides, has conducted business [sic], or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition prepare from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that—

(i) a bankruptcy petition preparer has—

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct,

the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer.

We reaffirm our conclusion, as set forth in our March 24, 1993, Order in the Gavins' bankruptcy case, that LAS and certain of its agents have engaged in the unauthorized practice of law. Neither Ms. Gavin nor Fulginiti had any knowledge regarding the choice of Chapters under which they could file, see *Skobinsky, supra,* 167 B.R. at 50; nor did they have any understanding of the exemptions which they could claim under federal or state law, or how to classify their debts on their Schedules. In both cases, Russell (apparently) made all of these choices for them, thereby implicitly deciding under what Chapter to file, providing them with classifications of loans, correcting errors on their forms, and advising their clients of remedies and procedures available to them in bankruptcy. Therefore, it is clear that LAS and at least Russell were engaged in the unauthorized practice of law. Russell was clearly supported in these activities by Johnson and Jackson.

For this reason, apart from any causes of action based on § 110, LAS and its principals were obliged to refund all fees received from the Gavins, Fulginiti, or any of their other customers. Since the unauthorized practice of law was an integral part of the business of LAS, and the evidence presented supports the conclusion that such conduct could be resumed in the future to the detriment of potential debtors were it not enjoined, it was and is appropriate to enjoin the activities of LAS and its active principals, Russell, Jackson, and Johnson, and prevent them from continuing to provide services to customers in the bankruptcy law arena in this jurisdiction.

However, it is now appropriate to also turn to § 110 as a separate and specific basis for relief for the commission of certain acts of bankruptcy preparers which Congress has specifically designated as illegal. First, we note that the name of the preparer, *i.e.,* LAS itself or its principals, was not signed and its name and address was not printed on the documents filed in the case, as required by § 110(b)(1). This court became aware of LAS's role only due to disclosures on L.B.F. 2016.1 by the respective Debtors, which forms were not signed by LAS and did not provide a full and accurate name or local address for LAS. Similarly, in violation of § 110(c)(1), neither the signature nor the Social Security number of the specific preparer of bankruptcy forms, which apparently should have at least included Russell, appears on the documents.

Clearly, LAS has used the word "legal" in its name in violation of § 110(f)(1). The wisdom of § 110(f)(1) is supported by the testimony of Ms. Gavin and Berardo, both of whom apparently intended to contact the local "legal aid" program, Community Legal Services, Inc., which provides free legal services to indigent persons in Chapter 7 consumer bankruptcy cases, or refers them to the bar-sponsored Consumer Bankruptcy Assistance Project for *pro bono* services.

The violation of § 110(h)(1) was equally manifest, since no declaration of the fee received was disclosed by LAS at any time. Finally, since LAS supplied only a single copy of the completed petition and other necessary documents to the Gavins and Fulginiti, it appears that no extra copies of the

documents prepared were furnished to the Debtors, as is required by § 110(d)(1).

LAS has presented no evidence of "reasonable cause" for any of its violations of § 110. Therefore, it is susceptible to fines up to $500 in both cases pursuant to §§ 110(b)(2), (c)(3), (d)(2), and (f)(2). Its submission of refunds to the Gavins and Fulginiti appear to avoid the liability arising under § 110(h)(2) by reason of § 110(h)(4).

The foregoing violations of §§ 110(b)(1), (c)(1), (d)(1), (f)(1), and (h)(1) are, however, all relevant in consideration of the imposition of the statutory penalties provided in § 110(i). These remedies are triggered "if a bankruptcy preparer violates this section," *i.e.*, § 110. Thus, the foregoing series of violations of §§ 110(b)(1), (c)(1), (d)(1), (f)(1), and (h)(1) are themselves more than sufficient to trigger the § 110(i) penalties in favor of the Gavins and Fulginiti. We should also note that the use of the "legal aid services" name; the employment and designation of such a totally unqualified and untrained person as Smith as its only local contact person, furnishing her with a self-serving and deceptive business card, identifying her as a "paralegal assistant;" and the slow and cumbersome delivery of services from parties, like Russell, who appear, to lay persons, to be attorneys or acting under the supervision of attorneys, are, in our opinion, "fraudulent, unfair, and deceptive" acts which pervade LAS's business operations.

We are also dismayed that LAS claimed that, in its Response to our March 13, 1995, Order that it had not been involved in any other cases in this jurisdiction. Obviously, it was involved in and accepted payment from Fulginiti, and this should have been disclosed in the Response. Smith's testimony on May 4, 1995, raises the possibility of additional LAS clients in this jurisdiction. This lack of candor to this court is certainly deceptive. Finally, we note that LAS ignored the AUST's discovery requests and failed to appear, personally or by counsel, at any hearings, either by telephone or in person. Its statement in the belatedly-dispatched letter requesting that we dismiss the Proceeding against it was simply an expression of wishful thinking.

■ Therefore, while we cannot identify any actual monetary damages to the Gavins and Fulginiti now that their excessive fee payments to LAS have been refunded, we will not hesitate to certify the numerous violations of § 110 and fraudulent, unfair, and deceptive acts of LAS and its principals to the District Court for imposition of $2,000 statutory penalties in favor of both the Gavins and Fulginiti, as well as to any other bankruptcy clients who made payments to LAS and are uncovered.[2] In light of this court's expectation that the Gavins and Fulginiti, justifiably in light of their cooperation with this court, will receive a substantial civil penalty, we have decided to impose a total fine of only $1,000 upon LAS. We are concerned that imposition of the maximum permissible fines may discourage payment to the victimized Debtors by LAS. We also note that the broad injunctive relief provided hereinafter will be an effective deterrent of future illegal conduct by LAS.

Injunctive relief is expressly authorized, somewhat redundantly, by both §§ 110(j)(1) and (j)(2)(B). We need not consider whether a (j)(1) injunction may be entered without the findings necessary under §§ 110(j)(2)(A) and (j)(2)(B), which are apparently necessary to impose a (j)(2) injunction, because we find that all of the elements of §§ 110(j)(2)(A) and (j)(2)(B) are met here. LAS has violated numerous provisions of § 110; has greatly misrepresented the experience and education of Smith; and has, as is indicated above, engaged in conduct which is fraudulent, unfair, and deceptive. There is no reason to think that LAS will change its name or method of operation unless enjoined, as required by § 110(j)(2)(A)(ii). Finally, we find that an injunction merely prohibiting certain conduct

---

2. We do note the rather quirky aspects of the requirement of our making a certification under § 110(i) to the District Court, which alone may impose the statutory penalties. This requirement can be contrasted to the somewhat less cumbersome procedure required by F.R.B.P. 9020(c), which provides that a bankruptcy court can issue a contempt order which becomes final in ten (10) days if no objection is filed thereto in the District Court. It also contrasts with the procedures in §§ 110(b)(2), (c)(3), (d)(2), (e)(2), (f)(2), (g)(2), (h)(4), which grant power of the bankruptcy court itself to impose a quasi-criminal fine of up to $500 upon preparers for each offense. *Compare In re Hipp, Inc.*, 895 F.2d 1503, 1509 (5th Cir.1990) (bankruptcy courts are not empowered to impose criminal contempts).

violative of §§ 110(b)(1), (c)(1), (c)(2), (d)(1), (f)(1), and (h)(1), would not be sufficient to halt LAS's violations of § 110. Only a name change (which it has not been suggested that LAS will undertake) and a complete alteration of LAS's methods of doing business (which likewise has not been proposed) could possibly render such limited relief an effective remedy.

This court does have some concern regarding the geographical scope of the injunction it should impose. In our Orders of March 13, 1995, and March 24, 1995, we expressly limited the scope of the injunctions issued to filings by LAS in this jurisdiction. However, in our Order of March 13, 1995, we warned that an injunction could be extended to include all LAS's activities in all jurisdictions.

At the close of the trial on May 4, 1995, the AUST vigorously urged us to expand the injunction to include all services by LAS in *any* and *all* jurisdictions. We agree with the AUST that the actions of LAS have been shown to be egregious unauthorized practice of law and violations of § 110. We also consider that lack of candor shown by LAS in its Response to our March 13, 1995, Order, and its lack of respect for this court by attempting to ignore the discovery requests and in fact the entire local proceedings and its lack of principles in dealing with even its faithful employee Smith.

As the affirmance by the District Court of the nationwide injunction in *Weatherley, supra*, indicates, this court has the power to issue an injunction against LAS's practices which would extend to all of its operations in any jurisdiction. A nationwide injunction appears clearly authorized by §§ 110(j)(1) and (j)(2)(B), since they speak in terms of entry of an injunction preventing a person from acting as a preparer anywhere.

LAS has given every indication that, while it intends to terminate its Philadelphia operations in response to the bothersome vigilance of this court, it has no intention of discontinuing its bankruptcy operations in California or possibly elsewhere. Therefore, it is appropriate to prevent LAS from continuing to do business in complete and utter violation of § 110 in any other locations in which it does business, now that its common practices have been exposed by proceedings in this jurisdiction.

The nationwide organization of the United States Trustee program strongly suggests that enforcement of such an Order, even in the Central District of California where LAS is located, can be implemented. We have confidence that the AUST will see that his California counterparts will enforce this Order. We will make California judges aware of it.

We therefore conclude that injunction precluding LAS from acting as a bankruptcy preparer in any jurisdiction is expressly authorized by the applicable law. Moreover, such relief is uniquely necessary and appropriate to protect debtors under the facts established in this case. Our Order will, moreover, avoid any unnecessary or unjust harsh effect upon LAS by allowing LAS and its principals to obtain permission to assist debtors in filing bankruptcy cases in a particular jurisdiction by paying all sums directed under this Order and the accompanying District Court certification under 11 U.S.C. § 110(i), and thereafter petitioning the local bankruptcy court and obtaining express permission to do so.

## D. CONCLUSION

We will therefore enter an Order (1) enjoining LAS and its principals, Russell, Jackson, and Johnson from acting as bankruptcy preparers in *any* jurisdiction, subject to the above-referenced conditions; (2) fining these parties, jointly and severally, a total of $1,000; and (3) certifying the matter of the statutory penalties which we believe should be paid to the individual Debtors to the District Court.

## ORDER

AND NOW, this 11th day of May, 1995, after a hearing of March 23, 1995, in reference to the role of "Legal Aide Services" or some variant thereof ("LAS"), and certain agents of LAS, particularly Patricia Smith, Tracy Russell, Keith Jackson, and Scott Johnson, in the filing of Bankr. No. 95–11698DAS; and the consolidated trial of May 4, 1995, in Adversary No. 95–0159DAS and a similar hearing regarding the role of the aforesaid parties in the filing of Bankr. No. 95–12649DAS; upon consideration of the oral argument of the United States Trustee on May 4, 1995; and noting the appearance of only Patricia Smith at both hearings on behalf of LAS, it is ORDERED AND DECREED as follows:

1. LAS, Patricia Smith, Tracy Russell, Keith Jackson, Scott Johnson, and all persons acting in concert with them, are permanently ENJOINED from assisting any parties in filing bankruptcy cases and from charging any persons for assisting them in filing bankruptcy cases in this jurisdiction and in any other jurisdiction in the United States of America unless and until they pay all sums due under this Order and any Order entered by the District Court under 11 U.S.C. § 110(i), and they successfully petition the bankruptcy court in that jurisdiction to be allowed to assist debtors in preparing bankruptcy petitions and charging debtors to do so in that jurisdiction.

2. LAS, Tracy Russell, Keith Jackson, and Scott Johnson are found jointly and severally liable to pay a fine totaling $1,000 to Joseph Simmons, Deputy in Charge of Bankruptcy Operations ("the Deputy"), 3726 United States Court House, 601 Market Street, Philadelphia, PA 19106, pursuant to 11 U.S.C. §§ 110(b)(2), (d)(2), and (f)(2).

3. The Deputy shall forthwith transfer a copy of the file in the above-captioned matters to the Clerk of the United States District Court for the Eastern District of Pennsylvania, as to that aspect of the Opinion which proposes the award of statutory damages of $2,000 in favor of Troy Wyatt Gavin and Bridgette A. Gavin and Denise Rose Fulginiti pursuant to 11 U.S.C. § 110(i)(1)(B)(i).

### ATTACHMENT

#### *ORDER*

AND NOW, this ___ day of May, 1995, upon certification of the Bankruptcy Judge, pursuant to 11 U.S.C. § 110(i), contained in the Bankruptcy Court's Opinion dated May 11, 1995, in these matters, it is hereby ORDERED AND DECREED that the Debtors, TROY WYATT GAVIN and BRIDGETTE A. GAVIN, and DENISE ROSE FULGINITI, are each awarded the sum of $2,000, payable to them by Legal Aide Services (or some variant thereof), Tracy Russell, Keith Jackson, and Scott Johnson, jointly and severally, pursuant to 11 U.S.C. § 110(i)(1)(B)(i).

/s/ [signature]
United States District Judge

### ORDER

#### June 15, 1995

AND NOW, this 15th day of June, 1995, after a hearing of June 15, 1995, scheduled pursuant to our Order of May 18, 1995, relevant to the matter of Catalina Leisenring, who has not filed a bankruptcy case in this court, but who paid $400 to "Legal Aide Services" ("LAS") to assist her in filing a bankruptcy case, noting that this court has held in the court's Opinion and accompanying Orders of May 11, 1995, 181 B.R. 814, in the above-entitled cases ("the Opinion"), that LAS was required to refund all fees paid to prospective debtors charged by them and which certified the facts of the above-captioned cases to the District Court recommending, *inter alia*, that $2,000 be awarded to the Debtors in these cases pursuant to 11 U.S.C. § 110(i)(1)(B)(i), it is

ORDERED that Joseph Simmons, Deputy in Charge of Bankruptcy Operations ("the Deputy"), shall forthwith transfer this Order and a Transcript of the hearing of June 15, 1995, to the Clerk of the United States District Court for the Eastern District of Pennsylvania, with the recommendation that the aspect of the Opinion which proposes the award of statutory damages of $2,000 in favor of Troy Wyatt Gavin and Bridgette A. Gavin and Denise Rose Fulginiti, pursuant to 11 U.S.C. § 110(i)(1)(B)(i), be extended to Catalina Leisenring as well.